1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   MARC MARCHIOLI,                         No. 2:16-cv-01115-MCE-AC

12              Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14   PRE-EMPLOY.COM, INC.,
     EISENHOWER MEDICAL CENTER,
15   and DOES 1 THROUGH 10,

16              Defendants.

17

18        On May 23, 2016, Plaintiff Marc Marchioli filed a class action complaint in this

19   Court against Defendants Pre-Employ.com, Inc. ("Pre-Employ"), Eisenhower Medical

20   Center ("EMC"), and Does 1 through 10, alleging that Defendants violated certain

21   requirements of the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681a et seq.,

22   thereby also violating California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

23   Code § 17200 et seq.  ECF No. 1.[1]  Presently before the Court is Defendant EMC's

24   Motion to Transfer Venue to the Central District of California.  ECF No. 7.  For the

25   reasons set forth below, EMC's motion is GRANTED.[2]

26        _____
               [1] Plaintiff has also filed a related individual action, 2:16-cv-01195-MCE-AC.

27             [2] Also pending before the Court are EMC's Motion to Dismiss (ECF No. 8) and Motion to Strike
     (ECF No. 11), Pre-Employ's Motion to Dismiss (ECF No. 16), and Plaintiff's Ex Parte Application for Order
28   Compelling Defendants to Participate in Discovery (ECF No. 29), all of which are denied without prejudice

                                          1

1

2

## BACKGROUND

3      Plaintiff, a resident of Pittsburgh, Pennsylvania, applied for employment with

4  Defendant EMC, a not-for-profit corporation incorporated in California, with its principal

5  place of business in Rancho Mirage, California (part of the Central District of California).

6  As part of the application process, Plaintiff was required to submit to a background check

7  performed by Defendant Pre-Employ, a corporation incorporated in California with its

8  principal place of business in Redding, California (part of this district).  The parties

9  dispute whether EMC offered Plaintiff employment.[3]  Regardless, in this case, Plaintiff

10  alleges that all Defendants violated the FCRA and UCL by improperly investigating,

11  preparing, procuring, or causing procurement of credit or consumer reports of Plaintiff

12  and Class Members without providing proper notice, making the proper disclosures, or

13  obtaining the proper authorizations or certifications.

14

15

## STANDARD

16

17      "For the convenience of parties and witnesses, in the interest of justice, a district

18  court may transfer any civil action to any other district or division where it might have

19  been brought."  28 U .S.C. § 1404(a).  The purpose of Section 1404(a) is to "prevent the

20  waste of time, energy, and money and to protect litigants, witnesses and the public

21  against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S.

22  612, 616 (1964) (internal quotation marks omitted).  On a motion to transfer venue, the

23  moving party must make "a strong showing of inconvenience to warrant upsetting the

24  plaintiff's choice of forum."  Hope v. Otis Elevator Co., 389 F. Supp. 2d 1235, 1243 (E.D.

25

26  as moot given the Court's decision on the transfer motion.

27      [3] In his related action, Plaintiff alleges that he accepted employment with EMC and was terminated
   before his first day of work. 2:16-cv-1195, Compl., ECF No. 1, at 2.  In the present Motion to Transfer
   Venue, however, Defendant EMC has indicated that it declined to offer employment to Plaintiff.  ECF

28  No. 7, at 6.  For purposes of this Memorandum and Order, the distinction is irrelevant.

Cal. 2005) (quoting <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir.1986)).  The Court has discretion in deciding whether such transfer is warranted based on an "individualized, case-by-case consideration of convenience and fairness." <u>Van Dusen</u>, 376 U.S. at 622.

Once the court determines a case could have been brought before the proposed transferee court, it must consider a number of private and public factors relating to the interests of the parties and the judiciary.  For example, the Court may consider: (1) the plaintiff's choice of forum, (2) the respective parties' contacts with the forum, (3) the contacts relating to the plaintiff's cause of action in the chosen forum, (4) the differences in the costs of litigation in the two forums, (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (6) the ease of access to sources of proof, (7) the complexity of the governing law,  and (8) other factors that, in the interest of justice, impact the convenience or fairness of a particular venue.  <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498–499 (9th Cir. 2000).

**ANALYSIS**

Before addressing the relevant factors, the Court must first consider whether the proposed transferee district, here the Central District of California, is one in which Plaintiff's action could have originally been brought.  More specifically, the transferee court must:  (1) be able to exercise personal jurisdiction over Defendants; (2) have subject matter jurisdiction over Plaintiffs' claims; and (3) be a proper venue.  <u>See</u> <u>Hoffman v. Blaski</u>, 363 U.S. 335, 343-44 (1960).  In the present action, the parties do not dispute that Plaintiff Marchioli could have brought his claims in the Central District.  Thus, the Court will turn to the remaining considerations that must be weighed in determining whether a transfer from the Eastern District to the Central District is appropriate.  Rather than focusing equally on all potentially relevant factors, however,

///

1    the Court limits its analysis to those factors that are of significance in this case and that
2    were addressed by the parties.

3         **A. Convenience of the Parties**

4         Evaluating the convenience of the parties in this case involves weighing the
5    Plaintiff's choice of forum, the parties' contacts with the forum, and the parties' contacts
6    as they relate specifically to Plaintiff's causes of action.

7              **1. Plaintiff's Choice of Forum**

8         Typically, a plaintiff's choice of forum is given "substantial weight."  N. Acceptance
9    Trust 1065 v. Gray, 423 F.2d 653, 654 (9th Cir. 1970).  In judging that weight, however,
10   "consideration must be given to the extent both of the defendant's business contacts with
11   the chosen forum and of the plaintiff's contacts, including those relating to [plaintiff's]
12   cause of action."  Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th
13   Cir.1968).  Where, as here, the plaintiff is a representative of a putative class of plaintiffs
14   who are located throughout the country, that representative's choice of forum is given
15   less weight.  See, e.g., Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987); Hoefer v.
16   U.S. Dept. of Commerce, 2000 WL 890862, at *2 (N.D. Cal. June 28, 2000).  Moreover,
17   the weight given to a plaintiff's choice is diminished when the plaintiff resides outside of
18   the selected forum.  Genimi Capital Group v. Yap Fishing Corp., 150 F.3d 1088, 1091
19   (9th Cir. 1998).

20        Here, Plaintiff is a resident of Pittsburgh, Pennsylvania, and represents putative
21   class members from unknown and likely various places across the nation.  Especially
22   taken together, these two facts greatly diminish any deference the Court might ordinarily
23   grant to Plaintiff's venue selection.  Indeed, Plaintiff is just one of many, and the
24   inconvenience to him of litigating in either the Eastern or Central District of California will
25   be the same.  Plaintiff's choice is therefore given little weight in the Court's analysis.

26             **2. The Parties' Contacts With the Forum**

27        Because Plaintiff is a resident of Pittsburgh, it seems Plaintiff's only contacts with
28   his chosen venue are rooted in any contact he had with Defendant Pre-Employ as a

                                             4

result of his application for employment with EMC.  Plaintiff, and presumably all class members, applied for employment with EMC in Rancho Mirage, California, and underwent a background check ordered by EMC and performed by Pre-Employ. Because Plaintiff has alleged the same actions and omissions against both defendants, it is difficult for the Court to determine which venue, if either, was home to more contacts relevant to this litigation.  Indeed the relevant actions allegedly took place in both Rancho Mirage and Redding.  But Plaintiff visited the EMC site in Rancho Mirage when he interviewed with the company, and—as EMC argues—any hiring decisions would have been made exclusively by EMC in Rancho Mirage.  ECF No. 7, at 2.  In addition, it seems Plaintiff's only contacts with Pre-Employ were the necessary result of his voluntary contacts with EMC.  Because Plaintiff's contacts were with both Defendants in both districts, and because the resultant harm alleged stems from his application for employment with EMC, the Court finds this factor to tip slightly in favor of transfer.

        The Court also finds it persuasive that Plaintiff does not dispute that a likely majority of class members—others who applied for employment with EMC in Rancho Mirage—reside in the transferee forum.  See ECF No. 18, at 2.  Assuming a large number of class members do indeed reside in the Central District, then the class members' contacts with the Central District are stronger overall, and transfer would be more convenient for those plaintiff class members who may be called to testify at trial.

        As for the Defendants, Plaintiff correctly notes that Defendants are located in both this district and the Central District.  ECF No. 13, at 6.  Plaintiff also notes that: (1) transfer should not be granted if it will merely shift convenience from one party to another; and (2) consent of the parties is irrelevant to the requirements of Section 1404. See ECF No. 13, at 4, 6–7.  Plaintiff then sets forth a tortured application of these rules to make the argument that transfer to the Central District would merely shift inconvenience from EMC to Pre-Employ, which is impermissible even if Pre-Employ consents because that consent is irrelevant.  Id.  The flaw in this argument is that Pre-Employ's consent actually indicates that Pre-Employ will not be inconvenienced, at

1   least not materially, by transfer to the Central District.  Although consent alone is not

2   enough to justify transfer,[4] it remains highly relevant to the Court's analysis concerning

3   the convenience of that Defendant.[5]  Put simply, the only party that would logically be

4   inconvenienced by changing venues has consented to the transfer, indicating its

5   determination that the Central District will not be an inconvenient forum.  A transfer to the

6   Central District thus would not transfer convenience from one defendant to the other, but

7   rather would simply lift the inconvenience from EMC.

8       Overall, the Court finds that the convenience of the parties tips in favor of transfer

9   because:  (1) the Plaintiff's choice of forum is given little weight under the circumstances,

10  and both venues are equally inconvenient to Plaintiff; (2) transfer is likely more

11  convenient to a greater number of plaintiff class members; and (3) the only party likely to

12  be inconvenienced by transfer has expressed its consent.

13  **B. Convenience of the Witnesses**

14      The convenience of nonparty witnesses is often the most important factor in the

15  venue transfer analysis.  <u>Florens Container v. Cho Yang Shipping</u>, 245 F. Supp. 2d

16  1086, 1092 (N.D. Cal. 2002); <u>see also</u> <u>Amini Innovation Corp. v. JS Imps., Inc.</u>,

17  497 F. Supp. 2d 1093, 1111 (C.D. Cal. 2007).  In considering this factor, courts look to

18  "who the witnesses are, where they are located, what their testimony will be, and why

19  such testimony is relevant."  <u>Florens Container</u>, 245 F. Supp. 2d at 1092-93 (internal

20  citation omitted).  "The party seeking a transfer cannot rely on vague generalizations as

21  to the convenience factors.  The moving party is obligated to identify the key witnesses

22  to be called and to present a generalized statement of what their testimony would

23  include."  <u>Id.</u> at 1093 (internal citation omitted); <u>see also</u> <u>Tittl v. Hilton Worldwide, Inc.</u>,

24  2013 WL 1087730, at *4 (E.D. Cal. Mar. 14, 2013) ("[T]o show inconvenience for

25

26      [4] The Court here properly considers not only Defendant's consent and Plaintiff's contacts, but also
    the convenience of potential witnesses and the convenience of the court, as discussed in <u>Ferens v. John</u>
27  <u>Deere Co.</u>, 494 U.S. 516, 529 (1990), cited in Plaintiff's Opposition, ECF No. 13, at 4.

28      [5] For these reasons, Plaintiff's objection to the Declaration of Adam Rosenthal (ECF No. 15, ¶ 1) is
    overruled.

1  witnesses, the moving party should state the witnesses' identities, locations, and content

2  and relevance of their testimony." (internal quotation marks and citations omitted)).

3       Absent from both EMC's moving papers and Plaintiff's opposition is any mention

4  of specific witnesses whose testimony may be required.  The power of either court to

5  compel witness testimony is a significant consideration in a court's transfer analysis

6  (Arrow Elecs., Inc. v. Ducommun Inc., 724 F. Supp. 264, 266 (S.D. N.Y. 1989)), and one

7  on which both parties are silent.[6]  Though EMC claims that many witnesses will be EMC

8  employees, it does not specify whether these employees will be corporate officers or

9  lower-level employees.  See Finley v. Count of Martin, 2009 WL 3320263, at *1, n.1

10  (explaining the distinction between corporate officers, who are treated like parties to the

11  lawsuit, and other employee witnesses, who are treated as any other nonparty witness).

12  In any event, the convenience of employee witnesses is entitled to less weight than the

13  convenience of ordinary nonparty witnesses, none of which are identified.  See Saca v.

14  Molyneux, 2007 WL 2769443, at *2 (E.D. Cal. Sept. 19, 2007); see also Metz v. U.S. Life

15  Ins. Co. in City of New York, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009)

16  ("[C]onvenience of employees is less important than the convenience of non-party

17  witnesses.") (internal quotation marks and citation omitted).  It may be the case that

18  neither party anticipates calling any nonparty non-employee witness.  Because the

19  burden nevertheless rests on EMC to identify not only key witnesses to be called but

20  also the content of their testimony, however, this factor tips against transfer.

21       Additionally, though EMC claims that the majority of witnesses will be employees

22  of EMC[7] and class members who were unsuccessful job applicants, many of whom

23  reside within the Central District (ECF No. 7, at 9), this claim obviously glosses over the

24  fact that Pre-Employ employees are also likely to be called as witnesses, and they most

---

25      [6] According to Federal Rule of Civil Procedure 45, a subpoena may be served "within the district of
26  the issuing court" or "outside that district but within 100 miles of the place specified for the deposition,
hearing, trial, production, or inspection."  Fed. R. Civ. P. 45(b)(2)(A)-(B).  Thus, witnesses who are outside
27  of the jurisdiction of the court and are more than 100 miles away from the courthouse cannot be compelled
to testify at trial.  Neither party has identified any such witness.

28      [7] Again, whether these are officers or lower-level employees is not clear to the Court.

1    likely reside within the Eastern District.  See ECF No. 13, at 7.  As explained above,

2    however, Pre-Employ's consent to transfer indicates that its witnesses will not be

3    inconvenienced by litigating in the Central District.  Any weight given to the convenience

4    of party witnesses and employee witnesses, however slight, might thus favor transfer

5    except that EMC has failed to specify a single witness by name, and has likewise failed

6    to divulge the content of their testimony.  Even in its Reply brief, EMC only implies that

7    witnesses might include EMC personnel in charge of hiring decisions and other EMC job

8    applicants.  ECF No. 13, at 8.  Such a vague reference to potential witnesses is not

9    enough to tip the scales in favor of transfer.[8]

10       **C. Interests of Justice**

11       In the present case, the Court has considered the following factors that go to the

12    interests of justice: (1) ease of access to sources of proof; (2) any administrative

13    difficulties arising from litigation in either venue; and (3) each forum's respective public

14    policy interest in the litigation.

15                    **1.  Access to Sources of Proof**

16       EMC argues that the "central sources of proof in this litigation are in Rancho

17    Mirage," presumably because relevant documents are located in the hospital or in

18    nearby storage facilities.  ECF No. 7, at 10.  Plaintiff, on the other hand, contends that

19    "key sources of evidence are located" in this district (ECF No. 13, at 7), and that the

20    location of documents is not an influential factor in an age of electronic communication.

21    ECF No. 13, at 10.

22       The Court tends to agree with Plaintiff and is not convinced that there is a

23    significant difference between the Eastern and Central Districts in terms of access to

24    evidence.  Indeed, in an age of email and fax, this factor is given less weight in any

25    event (see Metz, 674 F. Supp. 2d at 1149; Luchini v. CarMax, Inc., 2012 WL 2401530, at

26    _____

27    [8] To the extent Plaintiff objects to the portions of the Declaration of Celine Kaiser (ECF No. 15, ¶¶
     2–3) discussing the location of potential witnesses and documents, Plaintiff's objections are overruled.  To
     the extent those objections reference Ms. Kaiser's statements regarding financial hardship, the Court

28    declines to rule on Plaintiff's objections as EMC's alleged financial hardship did not weigh on the Court's
     present ruling.

1   *6 (E.D. Cal. June 25, 2012)), but that weight is especially diminished where, as here,

2   both proposed venues are within the same state and where a great deal of written

3   evidence likely exists in both Rancho Mirage and Redding.   Accordingly, the ease of

4   access to evidence factor does not carry much weight in the Court's venue transfer

5   analysis.

6                    **2.  Administrative Difficulties**

7        The Court may consider "the administrative difficulties flowing from court

8   congestion" in its transfer analysis.  <u>Decker Coal Co. v. Commonwealth Edison Co.</u>,

9   805 F.2d 834, 843 (9th Cir. 1986) (internal quotation marks and citations omitted).  EMC

10  thus cites to a statistical table published on the United States Courts' website indicating

11  that for the 12-month period ending June 30, 2015, the median time interval from a civil

12  filing to disposition in this District was 8.5 months, as compared to 5.5 months in the

13  Central District.  ECF No. 7, at 10–11.  Since filing of Defendant's motion to transfer

14  venue, the difference between those numbers has increased and the updated statistics

15  reflect a median of 9.4 months in this District, as compared to 5 months in the Central

16  District.[9]  Still another indication of court congestion is the 1,264 pending cases per

17  judgeship in the Eastern District, as compared to 448 pending cases per judgeship in the

18  Central District.  <u>See id.</u>  Though Plaintiff argues that the difference of a few months is

19  not significant enough to warrant transfer, the Court finds that this factor nevertheless

20  tips in favor of transfer.

21                    **3.  Public Policy Interests**

22       Defendant EMC argues that the Central District has a greater interest in ensuring

23  that its local businesses comply with the law because "at the heart of this action is

24  alleged conduct by EMC and its employees . . . ."  ECF No. 7, at 11.  It is true that the

25  Central District has an interest in this litigation and in ensuring that its local businesses

26  _____

27  [9] <u>See</u> "Comparison of Districts within the Ninth Circuit – 12-Month Period Ending June 30, 2016,"
    available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-3.
    It should be noted that this figure does not take into account the complexity of the case, and the Court is
28  not convinced that the discrepancy would not be larger for more complicated cases such as the present
    civil class action.

comply with the law.  It is unclear to the Court, however, how the Central District's interest is greater than that of the Eastern District, where Defendant Pre-Employ is located.  Indeed, conduct by both EMC and Pre-Employ lies at the heart of this action, and both districts thus have a localized interest in the litigation.  This factor is therefore neutral, and does not tip in favor of transfer as EMC suggests.

**D. Conclusion**

After weighing all of the above factors, the Court concludes transfer is appropriate.

**CONCLUSION**

For the reasons set forth above, Defendant EMC's Motion to Transfer Venue (ECF No. 7) is GRANTED, and EMC's Motion to Dismiss (ECF No. 8) and Motion to Strike (ECF No. 11), Pre-Employ's Motion to Dismiss (ECF No. 16), and Plaintiff's Ex Parte Application for Order Compelling Defendants to Participate in Discovery (ECF No. 29) are DENIED without prejudice.[10]  The Clerk of the Court is directed to transfer this case to the United States District Court for the Central District of California.

IT IS SO ORDERED.

Dated:  November 2, 2016

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[10] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).