ROPERS, MAJESKI, KOHN & BENTLEY
LAWRENCE BORYS (SBN 60625)
TIMOTHY J. LEPORE (SBN 294247)
445 South Figueroa Street, Suite 3000
Los Angeles, CA  90071-1619
Telephone:     (213) 312-2000
Facsimile:      (213) 312-2001
Email:            lawrence.borys@rmkb.com
timothy.lepore@rmkb.com


Attorneys for Defendant
PRE-EMPLOY.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC MARCHIOLI,<br><br>            Plaintiff,<br><br>v.<br><br>PRE-EMPLOY.COM, INC.,<br>EISENHOWER MEDICAL CENTER, and<br>DOES 1 THROUGH 10,<br><br>            Defendants. | CASE NO.  5:16-cv-02305-JGB-DTB<br><br>**DEFENDANT PRE-EMPLOY.COM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S [PUTATIVE] CLASS ACTION COMPLAINT**<br><br>[Fed R. Civ. Proc. 12(b)(1) and (6)]<br><br>Hon. Jesus G. Bernal<br><br>Date: January 23, 2017<br>Time: 9:00 a.m.<br>Courtroom: 1<br><br>[*Notice of Motion and Motion to Dismiss and Proposed Order submitted concurrently herewith*] |

Defendant, Pre-employ.com, Inc. ("Pre-employ"), by and through its attorneys, Ropers, Majeski, Kohn, & Bentley, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), hereby submits its Memorandum of Points & Authorities in Support of Its Motion to Dismiss Plaintiff's [putative] Class Action Complaint in its entirety.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................1

II.   RELEVANT BACKGROUND AND factual allegations ...............................2

III.  ARGUMENT........................................................................................................3

   A.   Plaintiff's Claims Against Pre-Employ Should Be Dismissed Because
        Plaintiff Fails To Plead Any Factual Allegations Supporting His Claims
        That Pre-employ Violated The Cited Sections Of The FCRA ...............................3

        1.   Pleading Requirements Of Rule 8(a)(2) .....................................................3

        2.   The Complaint's Conclusory Allegations And Legal Conclusions
             Do Not Satisfy Twombly And Iqbal.............................................................4

   B.   Because Pre-employ, A CRA, Was Not a "User" Of A Background Report
        And Could Not Itself Take Adverse Action Against Plaintiff, Plaintiff's
        Section 1681b(b)(2) And 1681b(b)(3) Claims Fail As A Matter of Law ...............7

   C.   This Court Must Dismiss Plaintiff's Complaint Because Plaintiff Does Not
        Allege An Injury In Fact Under Article III, And Therefore This Court
        Lacks Subject Matter Jurisdiction Over His Claims..................................................9

        1.   Legal Standard For Review ........................................................................9

        2.   Plaintiff's Complaint Does Not Allege Concrete Harm, And
             Therefore He Lacks Article III Standing ...................................................10

             a.   The Supreme Court's Decision in *Spokeo v. Robins* (2016) .........10

             b.   Plaintiff's Allegations Pre-Employ Technically Violated
                  Procedural Statues Of The FRCA Do Not Constitute
                  Concrete Harms .............................................................................11

        3.   Plaintiff's Conclusory Allegation Pre-employ Invaded His Privacy
             Interest Does Not Demonstrate Plaintiff Sustained A Concrete
             Harm ........................................................................................................13

   D.   This Court Should Dismiss Plaintiff's UCL Claim For Additional Reasons ........15

        1.   Plaintiff Lacks Standing To Allege His UCL Claim Because He
             Did Not Sustain An Economic Injury Caused By Pre-employ's
             Unfair Business Practices ..........................................................................16

        2.   Plaintiff's UCL Claim Fails As A Matter Of Law Because Plaintiff
             Did Not Plead Sufficient Facts To State A Plausible FCRA Claim ..........16

        3.   Plaintiff's UCL Claim For Restitution Fails As A Matter Of Law
             Because He Did Not Have A Prior Ownership In The Monies He
             Seeks To Disgorge ....................................................................................17

        4.   Plaintiff's UCL Requests For Restitution And Injunctive Relief
             Also Fail As A Matter Of Law Because The FCRA Preempts
             Inconsistent Remedies Under State Law .....................................................18

IV.   CONCLUSION..................................................................................................20

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

DEF PRE-EMPLOY.COM, INC.'S MEMO OF P'S
& A'S ISO ITS MTN TO DISMISS PLT'S
[PUTATIVE] CLASS ACTION COMPLAINT

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**FEDERAL CASES**

5

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)..................................................................................passim

6

7

*Balistreri v. Pacifica Police Dep't.*
  901 F.2d 696 (9th Cir. 1988) .............................................................................3

8

*Bell Atlantic v. Twombly*
  550 U.S. 544 (2007)..................................................................................passim

9

10

*Berdeaux v. U.S. Dep't. of Educ. Loan Discharge Unit*
  No. 10-1737, 2011 WL 3876001 (D. Ariz. Sept. 2, 2011) .......................................6

11

12

*Byrd v. Masonite Corp.*
  No. 16-35, 2016 WL 756523 (C.D. Cal. Feb. 25, 2016) ...........................................6

13

*Chabner v. United Omaha Life Ins. Co.*
  225 F.3d 1042 (9th Cir. 2000) ........................................................................15

14

15

*Clapper v. Amnesty In'tl USA*
  133 S. Ct. 1138 (2013) ....................................................................................9

16

17

*Clegg v. Cult Awareness Network*
  18 F.3d 752 (9th Cir. 1994) .............................................................................4

18

*Conley v. Gibson*
  355 U.S. 41 (1955)...........................................................................................1

19

20

*Dicesari v. Asset Acceptance LLC*
  No. 11-cv-6815, 2012 WL 4108944 (E.D. Pa. Sept. 18, 2012)...............................19

21

22

*Dutta v. State Farm Mut. Auto. Ins. Co.*
  No. 3:14-CV-04292-CRB, 2016 WL 6524390 (N.D. Cal. Nov. 3, 2016)..............................12

23

*Erickson v. Pardus*
  551 U.S. 89 (2007)...........................................................................................4

24

25

*Gubala v. Time Warner Cable, Inc.*
  No. 15-CV-1078-PP, 2016 WL 3390415 (E.D. Wis. June 17, 2016) ...................................13

26

27

*Hamilton v. DirecTV, Inc.*
  642 F. Supp. 2d 1304 (M.D. Ala. 2009) ............................................................19

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- ii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Jamison v. Bank of Am., N.A.*
  No. 2:16-CV-00422-KJM-AC, 2016 WL 3653456 (E.D. Cal. July 7, 2016) .................12, 13

*Kirchner v. First Advantage Background Servs. Corp.*
  No. CV 2:14-1437 WBS EFB, 2016 WL 6766944 (E.D. Cal. Nov. 14, 2016)......................12

*Khalili v. Comerica Bank,*
No. 11-759, 2011 WL 2445870, at **2-3 (N.D. Cal. June 16, 2011) ............................6

*Krottner v. Starbucks Corp.*
  628 F.3d 1139 (9th Cir. 2010) ..........................................................13

*Lagrassa v. Jack Gaughen, LLC*
  No. 09770, 2011 WL 1257371 (M.D. Pa. March 30, 2011)......................................8

*Larroque v. First Advantage LNS Screening Sols., Inc.*
  No. 15-cv-04684-JSC, 2016 WL 4577257 (N.D. Cal. Sept. 2016)...........................10, 12, 14

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992)....................................................................9

*Millett v. Ford Motor Credit Co.*
  No. 04-cv-2450-CM, 2006 WL 1301160 (D. Kan. May 9, 2006)..............................19

*Moran v. Screening Pros, LLC*
  No. 12-cv-05808, 2012 WL 10655744 (C.D. Cal. Sept. 28, 2012).........................19

*Nokchan v. Lyft, Inc.*
  No. 15-CV-03008-JCS, 2016 WL 5815287 (N.D. Cal. Oct. 5, 2016) ............................12, 14

*Obabueki v. IBM and Choicepoint, Inc.*
  145 F. Supp. 2d 371 (S.D.N.Y. 2001) ...................................................8

*Poulson v. Trans Union, LLC*
  370 F. Supp. 2d 592 (E.D. Tex. 2005)..................................................19

*Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*
11-cv-6648 SBA 2012 WL 3155559, at *3 (N.D. Cal. Aug. 2, 2012) ......................19

*Raines v. Byrd*
  521 U.S. 811 (1997)....................................................................9

*Rubio v. Capital One Bank* (9th Cir. 2010) .....................................................17

*Rubio v. Capital One Bank*
  613 F.3d 1195 (9th Cir. 2010) ........................................................17

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

DEF PRE-EMPLOY.COM, INC.'S MEMO OF P'S
& A'S ISO ITS MTN TO DISMISS PLT'S
[PUTATIVE] CLASS ACTION COMPLAINT

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Smith v. Ohio State Univ.*
4      No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016)..............................12, 13, 14

*Sopak v. Northern Mountain Helicopter Serv.*
5      52 F.3d 817 (9th Cir. 1995) ........................................................................................9

6
*Spokeo, Inc. v. Robins*
7      136 S. Ct. 1540 (2016).................................................................................passim

8      *Taylor v. IDC Techs., Inc.*
       No. 15-CV-02929-PSG, 2015 WL 6602526 (N.D. Cal. Oct. 30, 2015)...................8
9

*Tourgeman v. Collins Fin. Services, Inc.*
10     08-CV-1392 CAB (NLS), 2016 WL 3919633, at *2 (S.D. Cal. June 16, 2016)..........12

11     *Twombly v. Bell Atl. Corp.*
12     313 F. Supp. 2d 174 (S.D.N.Y.), ...............................................................................5

13     *Washington v. CSC Credit Servs., Inc.*
       199 F.3d 263 (5th Cir. 2000) .....................................................................................19
14

15     **CALIFORNIA CASES**

16     *Bank of the West v. Superior Court*
       2 Cal.4th 1254 (1992) ................................................................................................17
17

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
18     20 Cal. 4th 163 (1999) ...............................................................................................16

19     *Cortez v. Purolator Air Filtration Prods. Co.*
       23 Cal. 4th 163 (2000) ...............................................................................................19
20

*Korea Supply Co. v. Lockheed Martin Corp.*
21     29 Cal.4th 1134 (2003) ......................................................................................15, 17, 18

22     *Kraus v. Trinity Management Services, Inc.* (2000)
23     23 Cal.4th 116, 126-27 (2000).............................................................................17, 18

24     *Kwikset Corp. v. Sup. Ct.*
       51 Cal.4th 310 (2011) .........................................................................................15, 16
25

*Madrid v. Perot Sys. Corp.*
26     130 Cal. App. 4th 440 (2005) ....................................................................................17

27

28

- iv -

# TABLE OF AUTHORITIES
**(continued)**

Page

**FEDERAL STATUTES AND RULES**

15 U.S.C. § 1681b(b)(1) ..................................................................7, 8, 10, 11, 12

15 U.S.C. § 1681b(b)(2) ....................................................................7, 8,10, 12

15 U.S.C. § 1681b(b)(3) ........................................................................7, 8, 10

15 U.S.C. § 1681e(b) ...................................................................................11

15 U.S.C. § 1681j(a) ....................................................................................11

15 U.S.C. § 1681s(a) ....................................................................................19

15 U.S.C. § 1681e(d) ...................................................................................11

Fed. R. Civ. P. 12(b)(6) .................................................................................3

Fed. R. Civ. P. 8(a) ..................................................................................3, 6

Fed. R. Civ. P. 12(b)(1) .................................................................................9

**CALIFORNIA STATUTES**

Cal. Bus. & Prof. Code § 17200 ......................................................................15

Cal. Bus. & Prof. Code § 17204 ......................................................................16

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

## I. **INTRODUCTION**

In this putative class action, Plaintiff Marc Marchioli ("Plaintiff") asserts a variety of purported class claims against Pre-employ, a consumer reporting agency ("CRA"), under the Fair Credit Reporting Act ("FCRA") and California's Unfair Competition Law ("UCL").  This Court must dismiss Plaintiff's claims against Pre-employ because they suffer from numerous infirmities.

At the threshold, "to survive a motion to dismiss, a complaint must contain *sufficient factual matter*" to show that each claim is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's Complaint comes nowhere close to meeting the pleading standard of *Iqbal* and *Twombly*—for himself or for the "thousands" of putative class members he seeks to represent. Indeed, Plaintiff's Complaint—which contains virtually *no* factual detail whatsoever and is the definition of "bare bones"—could not even satisfy the more lenient and outdated former pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1955).  For this threshold reason, Plaintiff's claims against Pre-employ must be dismissed in their entirety.

At most, the only substantive *factual* allegation in Plaintiff's Complaint is that he applied for and was offered employment with co-defendant Eisenhower Medical Center ("EMC").  Apart from that allegation, the remainder of Plaintiff's Complaint consists only of cut-and-paste references to various sections of the Fair Credit Reporting Act ("FCRA") and "unadorned, the defendant-unlawfully-harmed-me accusation[s]," which are insufficient to state a claim under *Iqbal*.  *See* 556 U.S. at 678.  Indeed, the Complaint does not even specifically allege that Pre-employ prepared a background report on Plaintiff.  Plaintiff's threadbare and conclusory allegations are insufficient to state even an individual claim, and do not suggest a "pattern" or "policy" sufficient to allow Plaintiff to initiate costly and burdensome class-based discovery. Without *facts* to establish the plausibility of his purported claims, Plaintiff cannot proceed with his claims against Pre-employ, let alone class claims, as *Iqbal* and *Twombly* require.

Surely, Plaintiff's failure to plead sufficient facts alone compels the dismissal of his claims against Pre-employ.  But Plaintiff's claims fail for additional reasons too.  In particular, for

-1-

Plaintiff's multiple "claims" under the FCRA, the Complaint conflates Pre-employ's obligations as a CRA with EMC's "user" obligations for background reports. Several of the FCRA claims that Plaintiff pled (in his all-encompassing Paragraph 19 of the Complaint (hereinafter "Paragraph 19" ) regulate only *users* of background reports, which is Plaintiff's prospective employer, EMC. Pre-employ was not Plaintiff's prospective employer, and thus could not "procure" or "use" a background report to take an adverse employment action against him (assuming an adverse action even was taken - another point on which the Complaint is silent). As a matter of law, Plaintiff cannot state claims under Section 1681b(b)(2) or 1681b(b)(3) against a CRA, such as Pre-employ.

Plaintiff's claims against Pre-employ also fail because the Complaint contains no allegations of concrete harm. As the United States Supreme Court recently solidified, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016). At most, Plaintiff alleges—again with *no* factual detail—that Defendants "harmed and damaged" him and putative class members, pointing only to procedural violations of the FCRA. Critically, Plaintiff fails to explain *how* he was damaged, omits pleading a "concrete" harm, and does not seek actual damages. Instead, Plaintiff seeks only statutory and punitive damages. Plaintiff's conclusory allegations that Pre-employ violated the FCRA and caused undefined "damages" do not satisfy Article III's "concrete harm" requirement. For this separate reason, this Court must dismiss Plaintiff's claims against Pre-employ. Finally, to the extent Plaintiff's claim for injunctive relief under California's Unfair Competition Law ("UCL") survives, it suffers from additional standing defects and, in any event, the FCRA preempts the claim for injunctive relief.

## II.    RELEVANT BACKGROUND AND FACTUAL ALLEGATIONS

On May 23, 2016, Plaintiff filed a putative class action against Pre-employ and EMC for alleged violations of the FCRA and UCL. In his Complaint, Plaintiff alleges that he applied for and was offered employment with EMC. Compl. ¶¶ 2, 4. According to the Complaint, Defendants (without specifying which defendant allegedly did what) provided inadequate notices and disclosures regarding "investigation and reporting on him" and "improperly investigated" him. *Id.* ¶2. The Complaint also contains generic, non-specific class allegations that Pre-employ

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    "damaged" class members by: (a) failing to obtain requisite notices, disclosures and

2    authorizations, (b) conducting investigations in violation of the FCRA, and (c) disclosing "Credit

3    Information" in violation of the FCRA and violating the UCL. *Id.* ¶ 11.  The Complaint contains

4    no substantive allegations concerning Pre-employ's alleged individual or class-based violations of

5    the FCRA and UCL.

6           Based on these conclusory allegations, Plaintiff alleges under his "First Claim for Relief"

7    that Defendants violated a variety of sections of the FCRA.  Compl. ¶¶ 18-23.  In particular,

8    Paragraph 19 of the Complaint refers to 14 separate purported violations of different sections of

9    the FCRA.  And Paragraph 19 lumps both "Defendants" together, apparently purporting to state

10   claims against both Pre-employ and EMC for each of the violations alleged in the Complaint.  But

11   Paragraph 19 (or anywhere else in the Complaint), does not contain any factual allegations to

12   suggest that Pre-employ violated any of the FCRA sections.

13          Plaintiff also asserts claims against both Defendants under the UCL, alleging that

14   "Defendants" violated the "legal mandates" of the FCRA.  Compl. ¶¶24-30.  As alleged,

15   Plaintiff's UCL claim is contingent and dependent on his conclusory allegations supporting his

16   FCRA claim.  *Id.*

17   **III.    ARGUMENT**

18          **A.    Plaintiff's Claims Against Pre-Employ Should Be Dismissed Because Plaintiff
             Fails To Plead Any Factual Allegations Supporting His Claims That Pre-**
19           **employ Violated The Cited Sections Of The FCRA.**

20                 **1.    Pleading Requirements Of Rule 8(a)(2).**

21          Federal Rule of Civil Procedure 8(a) provides the basic standard for federal pleadings.

22   The function of a complaint is to "give the defendant fair notice of what the . . . claim is and the

23   grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Under

24   Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint

25   for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, a

26   Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether

27   "there is a lack of cognizable legal theory, or the absence of sufficient facts alleged under a

28   cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

"[T]o survive a motion to dismiss, a complaint "must contain sufficient factual matter" to show that a claim "is plausible on its face."" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Put another way, the factual allegations must "raise a right to relief above the speculative level"; it is not enough to merely create a suspicion of a legally cognizable right of action. *Twombly*, 550 U.S. at 555-56. To be considered facially plausible and not merely speculative, the plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Consequently, to survive a motion to dismiss, a plaintiff must plead something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," "naked assertion[s]," ""labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal citations and quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And although a court must construe the complaint in the light most favorable to the plaintiff and accept well-pleaded facts as true (*Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)), this does not apply to "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) ("[A] court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

## 2. The Complaint's Conclusory Allegations And Legal Conclusions Do Not Satisfy Twombly And Iqbal..

Here, the *only* substantive factual allegation Plaintiff pleads is that he applied for employment with EMC. Compl. ¶ 2. Plaintiff does not even specifically allege that Pre-employ prepared a background report on him, let alone any of the details of the content of such a report or the process or policies involved in preparing the report. Instead, Plaintiff just jumps right to a variety of legal conclusions couched as class-based factual allegations. Plaintiff offers *no* detail

Ropers Majeski Kohn & Bentley
*A Professional Corporation*
Los Angeles

about Pre-employ's alleged conduct or policies or procedures and offers *no* specific facts that *anyone* (not even Plaintiff himself) actually was affected by unlawful conduct or deficient procedures.  In short, Plaintiff merely says he applied for a job with EMC, and then claims that Defendants violated numerous sections of the FCRA and the UCL in connection with the application process.  Such allegations fail to satisfy the threshold pleading requirements of *Iqbal*. 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The facts of *Twombly* itself are instructive here.  The plaintiffs in *Twombly* were individuals who purchased local telephone or high speed internet service, and filed a class action against several telephone companies.  *Twombly v. Bell Atl. Corp*., 313 F. Supp. 2d 174, 176 (S.D.N.Y.), *vacated and remanded*, 425 F.3d 99 (2d Cir. 2005), *rev'd* 550 U.S. 544 (2007).  The *Twombly* plaintiffs alleged that the defendants violated the Sherman Act by conspiring "to prevent competitive entry into their respective local telephone and internet services markets."  *Id.* Their complaint consisted of 38 pages (96 paragraphs) of over a century of detailed history of the industry, the governing laws, the defendants and their businesses, and included citations to various government action, court decisions, and an interview with one of the defendant's CEO -- all of which the plaintiffs alleged formed the basis for their Sherman Act claim and purported class action.  *See Twombly*, 1:02-cv-10220, 2003 WL 25629874 (S.D.N.Y. April 14, 2003).

Despite those detailed and extensive allegations, the district court granted defendants' motion to dismiss because plaintiffs failed to allege sufficient detail to state a claim for a violation of the Sherman Act.  *Twombly*, 313 F. Supp. 2d at 188-89.  In its decision, the Supreme Court agreed, finding that despite the extensive allegations in the 96-paragraph complaint, plaintiffs' conclusory allegations and legal conclusions were insufficient to state a plausible claim for relief. In doing so, the Supreme Court adopted the now-familiar standard that "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value."  *Id*. 550 U.S. 557-58.

Following *Twombly* and *Iqbal*, other courts have recognized -- in cases with allegations

DEF PRE-EMPLOY.COM, INC.'S MEMO OF P'S & A'S ISO ITS MTN TO DISMISS PLT'S [PUTATIVE] CLASS ACTION COMPLAINT

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

far more detailed than here -- that a plaintiff's conclusory allegations that a defendant followed a deficient policy fail to satisfy Rule 8 pleading requirements.  In *Byrd v. Masonite Corp.*, No. 16-35, 2016 WL 756523, at *4 (C.D. Cal. Feb. 25, 2016), for example, the plaintiff brought overtime pay claims under state law and sought to represent a putative class.  The complaint made conclusory allegations of defendant's alleged "uniform  policy/practice of wage abuse."  *Id.*  The court found such allegations "stop[ped] short of the line between possibility and plausibility," particularly when plaintiff did not allege detailed facts "showing that Defendants had statewide policies or practices giving rise to Plaintiff's causes of action . . . ."  *Id.  See also Khalili v. Comerica Bank*, No. 11-759, 2011 WL 2445870, at **2-3 (N.D. Cal. June 16, 2011) (dismissing FLSA claim that failed to sufficiently identify the "policy or practice" followed by Defendant that resulted in alleged FLSA violation); *Berdeaux v. U.S. Dep't. of Educ. Loan Discharge Unit*, No. 10-1737, 2011 WL 3876001, at *8 (D. Ariz. Sept. 2, 2011) ("Plaintiff's conclusory allegation that Defendants did not follow policies, procedures and processes fails to provide sufficient factual information to state a claim that is plausible, as required by *Iqbal* and *Twombly*.").

Here, the Complaint similarly fails to sufficiently identify an alleged violation that could form the basis for even any of Plaintiff's individual claims, let alone any policies or practices that could support Plaintiff's class claims.  Indeed, unlike the cases above, Plaintiff does not even bother trying to offer *any* specific factual allegations to support his claims.  Rather, Plaintiff's "allegations" are nothing more than "legal conclusions" and "unadorned, the defendant-unlawfully-harmed-me accusation[s]."  *Iqbal*, 556 U.S. at 678.  For example, Plaintiff "generally" alleges that Pre-employ: "(a) failed to obtain requisite notices, disclosures and authorizations in violation of the FCRA; (b) conducted investigation and/or reporting in violation of the FCRA; (c) obtained Credit Information in violation of the FCRA; (d) disclosed Credit Information to employers in violation of the FCRA; and/or (e) violated the UCL." Compl. ¶ 11.  These conclusory allegations with no supporting detail do not even arise to the also-deficient "[t]hreadbare recitals of the elements of a cause of action."  *Id.*  Plaintiff cannot be allowed to proceed on a Complaint with *no* real factual content.

Finally, it is significant that Plaintiff attempts to transform this bare-bones, fact-free

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Complaint into a nationwide class action of *thousands* of purported class members. Plaintiff cannot even plead facts about his own specific experience and how he allegedly was harmed by Defendants. But to support a class action, Plaintiff could only move his allegations from "conceivable to plausible" by alleging sufficient facts of a "policy" or "practice" affecting not only Plaintiff, but *all* of the subjects of Pre-employ's background reports. Even assuming Plaintiff's Complaint alleged *specific facts* as to what Pre-employ allegedly did to Plaintiff, such allegations could not then support the conclusion that the same thing necessarily also happened to "thousands" of other unidentified and unknown individuals.[1] Plaintiff wholly fails to satisfy *Twombly* and *Iqbal*, and for this reason alone his claims against Pre-employ must be dismissed in their entirety.

**B.  Because Pre-employ, A CRA, Was Not a "User" Of A Background Report And Could Not Itself Take Adverse Action Against Plaintiff, Plaintiff's Section 1681b(b)(2) And 1681b(b)(3) Claims Fail As A Matter of Law.**

Plaintiff's First Claim for Relief purports to state class claims under Sections 1681b(b)(2) and b(b)(3) of the FCRA. Compl. ¶ 19(a), (g). Section 1681b(b) contains three subsections with separate and independent duties imposed on CRAs and employers. By its terms, subsection (b)(1) is the *only* of these three subsections which directly apply to CRAs. 15 U.S.C. § 1681b(b)(1). Subsections (b)(2) and (b)(3) impose notice and disclosure requirements upon *users* of information in a consumer report, *e.g.*, employers and prospective employers. 15 U.S.C. § 1681b(b)(2)-(3). Thus, Plaintiff and his purported class fail to state a viable Subsection (b)(2) or (3) claim against Pre-employ, a CRA who, as a matter of law, is not a "user" of its own consumer reports, and who does not make employment decisions with respect to the consumers on whom it prepares consumer reports for *actual* employers and prospective employers.

The statutory language of Sections 1681b(b)(2) and (3) confirms that these subsections do not apply to CRAs. First, subsection (b)(3) provides that "the person intending to take such adverse action" must provide certain information to the consumer. 15 U.S.C. § 1681b(b)(3). Second, subsection (b)(2) requires persons seeking to "procure" a consumer report to provide a

---

[1] To allow otherwise would "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678. *Iqbal* and its progeny were designed to prevent plaintiffs from searching for a claim through discovery, as opposed to sufficiently pleading a claim in their complaint.

- 7 -

1  disclosure to the job applicant before obtaining a background report and to obtain the applicant's

2  authorization for the background check.  By their very terms, both of these subsections relate to

3  the *employer*, not the CRA, who cannot make an ultimate employment decision for a third-party,

4  and who, obviously, does not "procure" a consumer report from itself.

5      Consistent with the plain terms of the statute, courts have recognized that subsections

6  (b)(2) and (3) of the statute impose obligations upon *users* of consumer reports, and *not* upon

7  CRAs.  In *Obabueki v. IBM and Choicepoint, Inc.*, 145 F. Supp. 2d 371, 393 (S.D.N.Y. 2001), for

8  example, the court discussed the interplay between the three subsections of Section 1681b(b) and

9  concluded:

10      [C]ontrary to plaintiff's suggestion each of the subsections need
        not, and does not, prescribe obligations for both [consumer
11      reporting] agencies and users [such as employers].  The second and
        third subsections both affect users. . . . . On the other hand, the first
12      subsection . . . sets forth obligations that an agency must satisfy
        before furnishing a consumer report.

13

14  *See also Lagrassa v. Jack Gaughen, LLC*, No. 09770, 2011 WL 1257371, at *2 (M.D. Pa. March

15  30, 2011) ("Plaintiff cannot argue a violation of § 1681b(b)(2) because that provision applies only

16  to *users* of a report, rather than agencies that furnish the report.  Thus, a Plaintiff may only assert

17  a violation of 15 U.S.C. § 1681b(b)(1)." (emphasis in original)); *Taylor v. IDC Techs., Inc*, No.

18  15-CV-02929-PSG, 2015 WL 6602526, at *1 (N.D. Cal. Oct. 30, 2015) ("When an *employer* uses

19  a consumer report for employment purposes, and before it takes any adverse action based in

20  whole or in part on the report, the *employer* must provide the would-be employee with a copy of

21  the report and a description of the employee's rights under the FCRA. *Consumer reporting*

22  *agencies*, meanwhile, must 'follow reasonable procedures to assure maximum possible accuracy."

23  (emphasis added)).

24      Here, Plaintiff does not, and cannot, allege he applied for employment with Pre-employ or

25  that Pre-employ was a "user" of his background report.  Rather, EMC set the criteria for

26  employment and was responsible for the ultimate decision to not hire Plaintiff. (Def. EMC's

27  MP&A ISO of Mot. to Strike, at 1:14-15 (*Docket Filing No.* 11-1)).  Pre-employ's obligations

28  under Section 1681b(b) were limited to those obligations contained in Section 1681b(b)(1) and

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  *expressly* imposed upon CRAs.  Thus, Plaintiff fails to state a viable claim against Pre-employ for

2  a violation of Section 1681b(b)(2) or b(b)(3), and, to the extent those claims survive, this Court

3  should dismiss them for this separate and independent reason.

4  **C.    This Court Must Dismiss Plaintiff's Complaint Because Plaintiff Does Not**

5  **Allege An Injury In Fact Under Article III, And Therefore This Court Lacks Subject Matter Jurisdiction Over His Claims.**

6  Separate and independent for the reasons above, this action must be dismissed for lack of

7  Article III standing.  Plaintiff cannot "allege a bare procedural violation, divorced from any

8  concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Spokeo*, 136 S. Ct. at

9  1549.  Plaintiff's Complaint, however, consists of nothing more than allegations of "bare

10  procedural violation[s]" of the FCRA and UCL.  Indeed, apart from using the words "harmed"

11  and "damaged," Plaintiff's Complaint fails to provide any specific allegations of harm, let alone

12  the "concrete harm" required by *Spokeo*.

13  **1.    Legal Standard For Review**

14  Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1), any party may challenge a

15  federal court's subject matter jurisdiction to hear the case before the court. *See Lujan v. Defenders*

16  *of Wildlife*, 504 U.S. 555, 561 (1992).  Jurisdiction in federal courts is limited by Article III of the

17  Constitution, which restricts federal courts to deciding actual cases and controversies.  *Raines v.*

18  *Byrd*, 521 U.S. 811, 818 (1997).  "One element of the case-or-controversy requirement is

19  plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty In'tl USA*, 133 S. Ct.

20  1138, 1146 (2013).  "Standing to sue . . . limits the category of litigants empowered to maintain a

21  lawsuit in federal court . . . ." *Spokeo*, 136 S. Ct. at 1547.

22  On a Rule 12(b)(1) motion, the plaintiff bears the burden of demonstrating standing.

23  *Sopak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).  To establish

24  standing, a plaintiff must show: "(1) injury-in-fact -- an invasion of a legally-protected interest

25  that is both concrete and particularized, and actual or imminent, (2) causation, and (3)

26  redressability." *Lujan*, 504 U.S. at 560.  Critical here, "[i]t is settled that Congress cannot erase

27  Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would

28  not otherwise have standing." *Raines*, 521 U.S. at 820 n.3.  Although Congress has a role in

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    identifying certain legally cognizable harms, that "does not mean that a plaintiff automatically

2    satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and

3    purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549.

4    Indeed, plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm,

5    and satisfy the injury-in-fact requirement of Article III." *Id.*

6           **2.    Plaintiff's Complaint Does Not Allege Concrete Harm, And Therefore He Lacks Article III Standing.**

7

8           Here, with respect to his FCRA claims, Plaintiff does not specifically allege *any* harm of

9    *any* kind, much less harm traceable to Pre-employ's conduct that resulted in *concrete* harm to

10   Plaintiff.  Indeed, at most, Plaintiff's Complaint makes the conclusory statement that Plaintiff and

11   the putative class were "harmed and damaged" by Defendants.  But Plaintiff -- who does not seek

12   actual damages -- provides no detail on *how* he or the putative class were harmed, let alone how

13   they suffered the requisite "concrete harm;"  nor could they, given the nature of the claims

14   alleged, which mostly relate to the provision of certain notices or information either to Plaintiff

15   (*see, e.g.*, 15 U.S.C. § 1681b(b)(2) and b(b)(3)) or between a CRA and user (*see, e.g.*, 15 U.S.C. §

16   1681b(b)(1)).  Even assuming Plaintiff did not obtain certain notices, Plaintiff's Complaint

17   *nowhere* alleges that this caused him *concrete harm*.  And, obviously, no harm could result from

18   Plaintiff not receiving information CRAs and users exchange only between themselves. *See*

19   *Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-cv-04684-JSC, 2016 WL

20   4577257, at *5 (N.D. Cal. Sept. 2016). Without any actual harm, the most Plaintiff could argue is

21   that the alleged technical violations of the FCRA alone constitute an "injury" sufficient to

22   maintain standing.  Such an argument is plainly incompatible with *Spokeo*.

23           **a.    The Supreme Court's Decision in *Spokeo v. Robins* (2016)**

24           In *Spokeo,* the Supreme Court granted certiorari to decide whether a plaintiff's allegations

25   that a consumer reporting agency ("CRA"), Spokeo, Inc., violated certain FCRA statutes satisfied

26   Article III's standing requirements. *Spokeo*, 136 S. Ct. at 1545-46. There, the plaintiff filed a

27   putative class action, alleging that Spokeo posted inaccurate information about him on its website.

28   *Id.* at 1546.  The plaintiff alleged this violated the FCRA's statutes, specifically claiming that

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

DEF PRE-EMPLOY.COM, INC.'S MEMO OF P'S & A'S ISO ITS MTN TO DISMISS PLT'S [PUTATIVE] CLASS ACTION COMPLAINT

Spokeo failed to: (1) follow reasonable procedures to assure maximum possible accuracy of consumer reports (15 U.S.C. § 1681e(b)); (2) notify providers and users of consumer information of their responsibilities under FCRA (15 U.S.C. § 1681e(d)); (3) limit the circumstances in which such agencies provide consumer reports "for employment" purposes (15 U.S.C. § 1681b(b)(1)); and post toll-free numbers for consumers to request reports, (15 U.S.C. § 1681j(a)). The plaintiff's putative class action complaint also alleged Spokeo willfully violated the FCRA, and thus entitled to statutory and punitive damages. *Id.*

On appeal, the Supreme Court held Article III standing requires a concrete harm even in the context of a statutory violation. *Spokeo, Inc.*, 136 S. Ct. at 1549. This is because a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Rather, at minimum, the plaintiff must still demonstrate a defendant's violation of a statute poses a "risk of real harm." *Id.* at 1549.

To that end, the Supreme Court acknowledged "that Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id.* at 1549 (citations omitted). But the Supreme Court explicitly stated that a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. And therefore, allegations of "a bare procedural violation, divorced from any concrete harm," do not satisfy the injury-in-fact requirement of Article III. *Id.* at 1549. Expounding on this, the Supreme Court stated that even if a CRA failed to provide required notices to a user of the CRA's consumer information, that information nevertheless may be entirely accurate, and thus no concrete harm is sustained. *Id.* Furthermore, the Supreme Court noted that even if a consumer report contained inaccuracies, not all trivial inaccuracies cause harm or present any material risk of harm. *Id.*

**b.    Plaintiff's Allegations Pre-Employ Technically Violated Procedural Statues Of The FRCA Do Not Constitute Concrete Harms.**

After *Spokeo*, it is clear that to sufficiently allege a "concrete" harm to satisfy Article III standing, it is *not* enough to merely allege a violation of the FCRA's procedural statutes. As the Supreme Court cautioned, Congress' enumeration of private causes of action to redress statutory

- 11 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    rights violated does not automatically satisfy the injury in fact requirement. *Spokeo*, 136 S. Ct. at

2    1549. Accordingly, following the Supreme Court's decision in *Spokeo*, federal district courts have

3    confirmed that plaintiffs' may no longer merely allege bare violations of the procedural statutes

4    contained in the FCRA to confer Article III standing if no concrete harm results from the

5    violation. *See Smith v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675, at *4 (S.D. Ohio

6    June 8, 2016)(holding allegations that defendant violated  Section 1681b(b)(2)(A)(ii) of FCRA

7    regulating content of disclosure and authorization prior to procuring consumer report is not a

8    concrete harm); *Larroque*, 2016 WL 4577257 *5 (holding allegations that a CRA provide a

9    consumer report to an employer prior to  certifying that the employer had complied with the

10   disclosure and authorization requirements in Section 1681(b)(b)(1) of the FCRA does not

11   constitute a concrete harm.);  *Kirchner v. First Advantage Background Servs. Corp.,* No. CV

12   2:14-1437 WBS EFB, 2016 WL 6766944, at *1 (E.D. Cal. Nov. 14, 2016) (holding allegations

13   that a CRA violated Section 1681b(b)(2)(A)(ii) of FCRA regulating content of disclosure and

14   Section 1681(b)(b)(1) requiring certification that the employer had complied with the disclosure

15   and authorization requirements does not constitute a concrete harm.); *Dutta v. State Farm Mut.*

16   *Auto. Ins. Co*., No. 3:14-CV-04292-CRB, 2016 WL 6524390, at *3 (N.D. Cal. Nov. 3, 2016)

17   (holding allegations that an employer violated numerous procedural statutes of the FCRA based

18   on accurate consumer report does not constitute a concrete harm.); *Nokchan v. Lyft, Inc*., No. 15-

19   CV-03008-JCS, 2016 WL 5815287, at *4 (N.D. Cal. Oct. 5, 2016) (holding employer's failure to

20   provided FRCA's required disclosures in a separate document or a summary of his rights under

21   the FCRA does not constitute a concrete harm.)

22        Moreover, many district courts have reached this same conclusion for other federal

23   consumer statutes. *Jamison v. Bank of Am., N.A.*, No. 2:16-CV-00422-KJM-AC, 2016 WL

24   3653456, at *4 (E.D. Cal. July 7, 2016) (holding allegations that a bank violated the Truth in

25   Lending Act of 1968's by failing to account for insurance payments in payoff statements is not a

26   concrete harm); *Tourgeman v. Collins Fin. Services, Inc*., 08-CV-1392 CAB (NLS), 2016 WL

27   3919633, at *2 (S.D. Cal. June 16, 2016) (holding "Spokeo confirms that merely asserting a

28   statutory violation that results in no actual injury is not sufficient to confer Article III standing"

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    and finding that allegations a defendant violated the Fair Debt Collections by erroneously

2    identifying the account holder of the debt does not constitute a concrete harm.);  *Gubala v. Time*

3    *Warner Cable, Inc.*, No. 15-CV-1078-PP, 2016 WL 3390415, at *4 (E.D. Wis. June 17, 2016)

4    (concluding allegations that defendant violated Cable Communications Policy Act by failing to

5    destroy personal information at a certain point does not equate to a concrete harm, even despite

6    plaintiff's conclusory allegations of invasion of privacy.)

7         Applying the Supreme Court's new standing doctrine, it is quite clear that Plaintiff's

8    allegations of bare-statutory violations do not constitute a concrete harm.  And yet, Plaintiff does

9    not plead Pre-employ's alleged violations of these statutes resulted in any harm. He does not

10   factually plead that Pre-employ disclosed prohibited consumer information, or that EMC used the

11   consumer report for a purpose not authorized under FCRA. He also does not allege that the

12   consumer information Pre-employ provided EMC was incorrect. Consequently, Plaintiff's bare

13   allegations that Pre-employ failed to maintain reasonable procedures, divorced from any concrete

14   harm Congress identified in the statutes themselves, cannot satisfy Article III's standing

15   requirements.

16        **3.    Plaintiff's Conclusory Allegation Pre-employ Invaded His Privacy**
17        **Interest Does Not Demonstrate Plaintiff Sustained A Concrete Harm.**

18        As stated above, a "concrete" harm must actually exist in a way that is "real" and not

19   "abstract." *Spokeo, Inc.*, at 136 S. Ct. at 1548. And while the Supreme Court has recognized that

20   an intangible harm may constitute a concrete harm, a plaintiff still must clearly allege facts

21   demonstrating an intangible harm was sustained, or that there is a credible threat of harm that is

22   real and imminent. *Id.* at 1547; *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010)

23   (requiring "a credible threat of harm [that] is both real and immediate, not conjectural or

24   hypothetical" to establish a concrete harm (internal citations omitted)); *see also Jamison*, 2016

25   WL 3653456, at *4 ("Conclusory allegations of harm [are] not accept[ed] as true, such as that

26   plaintiff 'has been harmed and has suffered an increased cost or burden due to [the d]efendant's

27   actions.'" (citations omitted)).

28        In *Smith v. Ohio State University*, an analogous case to Plaintiff's, the plaintiffs there

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    alleged that during their hiring process with the university, the university violated the FCRA by

2    "provid[ing] a disclosure and authorization to [the plaintiffs] which improperly included

3    extraneous information such as a liability release, in violation of the FCRA." *Smith*, 2016 WL

4    3182675 at *1. In evaluating whether the plaintiffs had standing to pursue claims under the

5    FCRA, the district court cited the Supreme Court's admonition that "[a] violation of one of the

6    FCRA's procedural requirements may result in no harm."  Desperate to salvage their claims, the

7    plaintiffs argued "their 'privacy was invaded and they were misled as to their rights under the

8    FCRA,'" and that this amounted to a "concrete harm."  *Id.*  The court rejected this conclusory

9    allegation, holding that plaintiffs failed to point to any "concrete consequential damage" from the

10   alleged procedural violation.  *Id.* at *4.

11       Moreover, in *Nokchan v. Lyft, Inc.*, the Northern District of California rejected a

12   plaintiff's argument that he suffered an invasion of his privacy because the consent he provided

13   was not valid due to procedural errors with the required FCRA's disclosures. In that case, the

14   employer, Lyft, provided the plaintiff with a consent form that contained the requisite disclosures

15   under FCRA, but also contained extraneous information. *Nokchan*, 2016 WL 5815287, at *1. Lyft

16   moved to dismiss the complaint for failure to allege a concrete harm. *Id.* At the oral argument, the

17   plaintiff argued that the failure to comply with FCRA's procedural statute resulted in the invasion

18   of his privacy. *Id.* at 6. But the Northern District rejected this argument outright, stating the

19   plaintiff expressly consented to the consumer report being released to Lyft, and therefore there

20   was no unauthorized disclosure of her information similar to a common law invasion of privacy

21   claim. *Id.* at 5; *see also Larroque*, 2016 WL 4577257 *5.

22       Similar to the plaintiffs in *Smith* and *Nockan*, Plaintiff fails to plead any facts

23   demonstrating that he sustained a "concrete consequential damage" from the alleged FCRA

24   violations.  At most, in his UCL allegations, Plaintiff inexplicitly alleges that Pre-employ invaded

25   his privacy through dissemination of private information. Yet apart from this conclusory

26   allegation, Plaintiff failed to plead any factual allegations that he did not authorize EMC, and thus

27   Pre-employ, to procure a consumer report on him.  In fact, Plaintiff pleads only one factual

28   allegation at all: that he "was an applicant for employment and/or an employee of EMC."  Compl.

- 14 -

¶ 2. That obviously has nothing to do with any "privacy" interest even if an alleged privacy harm could constitute a "concrete harm" for purposes of his UCL claim. Consequently, Plaintiff has not alleged an injury in fact to satisfy Article III's constitutional limitation on this Court's jurisdiction, and therefore this Court should dismiss his Complaint.

### D.    This Court Should Dismiss Plaintiff's UCL Claim For Additional Reasons.

Plaintiff's Second Claim for Relief is brought under the UCL. As with his FCRA claims, Plaintiff's UCL claim fails because he does not plead sufficient facts to state a claim and because he lacks Article III standing to maintain his claim. But he UCL claim fails for additional reasons.

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The UCL covers a wide range of conduct, as it embraces "anything that can properly be called a business practice" and "borrows violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp*. 29 Cal.4th 1134, 1143 (2003) (citations omitted); *see Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). But while the scope of conduct covered by the UCL is broad, its remedies are limited to equitable relief; "damages cannot be recovered." *Korea Supply Co.*, 29 Cal.4th at 1143. Moreover, a plaintiff must satisfy the UCL's restrictive standing requirements, which require a party to (1) demonstrate a loss or deprivation of money or property, i.e., economic injury, and (2) show that that economic injury was *caused by* the unfair business practice that is the gravamen of the claim. *Kwikset Corp. v. Sup. Ct.,* 51 Cal.4th 310, 322 (2011) (emphasis in original).

Applying these principles here, Plaintiff's UCL claim fails for four additional reasons: First, Plaintiff lacks standing to sue because he did not sustain an economic injury. Second, Plaintiff's UCL claim is contingent on pleading sufficient facts to state a plausible FCRA claim, which Plaintiff's Complaint fails to do. Third, Plaintiff does not have a prior ownership interest in the funds he seeks to disgorge from Pre-employ. Finally, the FCRA preempts Plaintiff's request for restitution and injunctive relief under UCL.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

4852-1113-8365.1                                    - 15 -                    DEF PRE-EMPLOY.COM, INC.'S MEMO OF P'S
& A'S ISO ITS MTN TO DISMISS PLT'S
[PUTATIVE] CLASS ACTION COMPLAINT

**1.    Plaintiff Lacks Standing To Allege His UCL Claim Because He Did Not Sustain An Economic Injury Caused By Pre-employ's Unfair Business Practices.**

In addition to lacking Article III standing, Plaintiff also does not have standing to allege his UCL claim because the private right of action is limited to persons "who [have] suffered injury in fact and [have] lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code § 17204. As the California Supreme Court has held:

> To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.

*Kwikset Cor.*, 51 Cal.4th at 322 (emphasis in original). Consequently, the standing requirements under the UCL are even narrower than Article III's standing requirements, as a UCL claim requires a person to suffer an "economic injury" as opposed to an intangible injury not resulting in any economic loss. *Id.* at 324.

Here, Plaintiff fails even to allege that Pre-employ caused him to sustain an economic injury. At most, Plaintiff ambiguously alleges that Pre-employ's actions resulted in an invasion of his privacy. (Compl. ¶ 27). But a conclusory allegation that Pre-employ invaded his privacy does not equate to an economic injury. And Plaintiff does not allege additional facts that this invasion of his privacy deprived him of money or property to which he had a cognizable claim, or that it required him to enter into an economic transaction that would otherwise have been unnecessary. *See Kwikset Corp.*, 51 Cal.4th at 323. Thus, for this separate reason, Plaintiff lacks standing to allege a UCL claim.

**2.    Plaintiff's UCL Claim Fails As A Matter Of Law Because Plaintiff Did Not Plead Sufficient Facts To State A Plausible FCRA Claim.**

Because the UCL "'borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable," a plaintiff must properly plead the defendant violated the underlying laws and statutes that are the basis for the UCL claim. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    (1999). For example, in *Rubio v. Capital One Bank* (9th Cir. 2010), the defendant argued

2    plaintiff's UCL claim failed on the merits, which was based on violations of the Truth in Lending

3    Act ("TILA). *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010). The Ninth

4    Circuit disagreed, stating that because the plaintiff properly alleged a TILA violation, the plaintiff

5    also properly "alleged a UCL violation under the prong of the UCL that prohibits "unlawful"

6    business acts or practices." *Id.* at 1204.

7        Plaintiff's UCL claim is dependent on his allegations that Pre-employ violated the FCRA.

8    (Compl. ¶ 26.)  Specifically, Plaintiff's UCL claim rests upon this sole conclusory allegation: Pre-

9    employ "engaged in business activities, including investigating, collecting information, reporting,

10    evaluating and /or hiring [Plaintiff], while violating the legal mandates of FCRA regarding the

11    manner of conducting those business activities."  Compl. ¶ 26.  As demonstrated above,

12    Plaintiff's conclusory allegations regarding the FCRA do not satisfy threshold pleading

13    requirements.  Consequently, the Court must also dismiss Plaintiff's UCL claim.

14            **3.**    **Plaintiff's UCL Claim For Restitution Fails As A Matter Of Law**

15                        **Because He Did Not Have A Prior Ownership In The Monies He Seeks To Disgorge.**

16        Under the UCL, a private plaintiff is limited to only equitable remedies in the form of

17    injunctive relief or restitution.  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992)

18    ("While the scope of conduct covered by the UCL is broad, its remedies are limited" to equitable

19    remedies.").  For a UCL claim seeking restitution, a plaintiff is limited to recovering from a

20    defendant the specific fund received from the plaintiff, and the plaintiff must demonstrate a prior

21    ownership interest in the fund.  *Korea Supply*, 29 Cal. 4th at 1149; *Madrid v. Perot Sys. Corp*.

22    130 Cal. App. 4th 440, 456 (2005) ("[P]laintiff fails to cite any authority that a UCL plaintiff may

23    recover money from a defendant who never received it on a theory that the defendant conspired

24    with or aided someone else who did receive it.").

25        In *Kraus v. Trinity Management Services, Inc*. (2000), the California Supreme Court

26    explained the difference between restitution and disgorgement in the context of the UCL.  *Kraus*,

27    23 Cal.4th 116, 126-27 (2000).  Restitution compels a UCL defendant to return money obtained

28    through an unfair labor practice to those who had an interest in the money or property taken.  *Id.*

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

DEF PRE-EMPLOY.COM, INC.'S MEMO OF P'S
& A'S ISO ITS MTN TO DISMISS PLT'S
[PUTATIVE] CLASS ACTION COMPLAINT

On the other hand, disgorgement is broader than restitution because it "may compel a defendant to surrender all money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained . . ." *Id*. at 127.  Subsequently, in *Korea Supply Co.*, the California Supreme Court affirmed that nonrestitutionary disgorgement is not an available remedy under the UCL.

In *Korea Supply Co.*, the court stated that a nonrestitutionary disgorgement remedy is not permitted under the UCL, "as it would enable a [plaintiff] to obtain tort damages while bypassing the burden of proving the elements of liability under a traditional tort claim . . . ." *Korea Supply Co.*, 29 Cal.4th at 1150-51 (emphasis added).  Moreover, the court explained that any conclusion to the contrary would result in plaintiffs using the UCL "as an all-purpose substitute for a tort or contract action, something the Legislature never intended." *Id*.  Consequently, the court held that a plaintiff may only "recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id*. at 1148.

Here, Plaintiff seeks restitution and disgorgement of Pre-employ's profits as a remedy for his UCL claim.  Compl. ¶ 29.  As made clear by the California Supreme Court, disgorgement is only applicable to the extent it represents a restitutionary remedy.  That is, Plaintiff may only disgorge profits from Pre-employ if the profits represent monies he had a prior interest in.  But this is impossible. First, Plaintiff does not plead he every had any prior interest in any monies that Pre-employ received.  Second, Pre-employ never received monies from Plaintiff, and therefore there are no monies to return.  Thus, Plaintiff's request for this Court to disgorge Pre-employ of its profits is not a restitutionary remedy, but rather a legal claim for damages.  For this additional reason, this Court must dismiss Plaintiff's UCL claim.

### 4. Plaintiff's UCL Requests For Restitution And Injunctive Relief Also Fail As A Matter Of Law Because The FCRA Preempts Inconsistent Remedies Under State Law.

Finally, Plaintiff's requests for injunctive relief and restitution under the UCL are preempted because the FCRA limits a plaintiff's private cause of action to actual or statutory damages.  As stated above, "A UCL action is an equitable action . . . [and] damages are not

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    available." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000).  But under

2    the FCRA, private plaintiffs may seek only money damages and not equitable relief such as an

3    injunction, which is specifically reserved to the FTC.  *See* 15 U.S.C. § 1681s(a); *Washington v.*

4    *CSC Credit Servs., Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) ("Congress vested the power to obtain

5    injunctive relief solely with the FTC.").  Thus, Plaintiff cannot use state law to obtain an

6    injunction for FCRA violations because the FCRA expressly preempts any state law that is

7    inconsistent with its remedial scheme.  *See, e.g.*, *Dicesari v. Asset Acceptance LLC*, No. 11-cv-

8    6815, 2012 WL 4108944, at *6 (E.D. Pa. Sept. 18, 2012) (granting motion to dismiss "to the

9    extent that Plaintiff seeks this injunction not under the FCRA, but under state law"); *Poulson v.*

10   *Trans Union, LLC*, 370 F. Supp. 2d 592, 593 (E.D. Tex. 2005) (same); *Hamilton v. DirecTV, Inc.*,

11   642 F. Supp. 2d 1304, 1306 (M.D. Ala. 2009) (same); *Millett v. Ford Motor Credit Co.*, No. 04-

12   cv-2450-CM, 2006 WL 1301160, at *4 (D. Kan. May 9, 2006).  The same holds true for UCL

13   actions seeking injunctive relief under the FCRA.  *See Quadrant Info. Servs., LLC v. LexisNexis*

14   *Risk Solutions, Inc.*, No. 11-cv-6648 SBA, 2012 WL 3155559, at *3 (N.D. Cal. Aug. 2, 2012)

15   (dismissing UCL claim seeking injunctive relief under FCRA violations because such relief is

16   preempted); *Moran v. Screening Pros, LLC*, No. 12-cv-05808, 2012 WL 10655744, at *8 (C.D.

17   Cal. Sept. 28, 2012) (same). Consequently, this Court should also dismiss Plaintiff's Second

18   Claim for Relief because the FCRA preempts Plaintiff's ability to obtain equitable relief under

19   the UCL.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27

28

- 19 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

IV.  **CONCLUSION**

For the foregoing reasons, Pre-employ respectfully requests that this Court dismiss

Plaintiff's Complaint against Pre-employ in its entirety.

Dated:  November 23, 2016                    ROPERS, MAJESKI, KOHN & BENTLEY


                                             By: */s/ Timothy J. Lepore*
                                                 TIMOTHY J. LEPORE
                                                 LAWRENCE BORYS
                                                 Attorneys for Defendant
                                                 PRE-EMPLOY.COM, INC.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1

## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that a true and correct copy of the above and foregoing

3 document, **DEFENDANT PRE-EMPLOY.COM, INC.'S MEMORANDUM OF POINTS**

4 **AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S**

5 **[PUTATIVE] CLASS ACTION COMPLAINT**, has been served on November 23, 2016 to all

6 counsel of record who are deemed to have consented to electronic service via the Court's

7 CM/ECF system pursuant to L.R. 5-3-2.1.

8

9      By: _____ */s/ Kim Cederquist*_____
               Kim Cederquist

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles