UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-2305-JGB(DTBx)** | Date | January 25, 2017 |
| Title | *Marc Marchioli v. Pre-Employ.com, Inc., Eisenhower Medical Center, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order: (1) GRANTING EMC's Motion to Strike Plaintiff's Amended Complaint (Dkt. No. 44); (2) GRANTING PE's Motion to Strike Plaintiff's Amended Complaint (Dkt. No. 45); (3) GRANTING EMC's Anti-SLAPP Motion (Dkt. No. 41) and DISMISSING Plaintiff's UCL Claim against EMC WITH LEAVE TO AMEND; (4) GRANTING EMC's Motion to Dismiss (Dkt. No. 40); (5) GRANTING PE's Motion to Dismiss (Dkt. No. 42.); and (5) DISMISSING Plaintiff's Complaint WITHOUT PREJUDICE. (Dkt. No. 1.)

   Before the Court are Defendants' motions to strike, (Dkt. Nos. 44-1 & 45-1), EMC's Anti-SLAPP Motion, (Dkt. No. 41-1), and both Defendants' motions to dismiss. (Dkt. Nos. 40-1 & 42-1.) The Court finds these motions appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15.  After considering all papers timely filed in support of, and in opposition to the motions, the Court GRANTS Defendants' motions, DISMISSES the Complaint WITH LEAVE TO AMEND.

## I. BACKGROUND

**A. Procedural History**

   Plaintiff, Marc Marchioli ("Plaintiff") initially filed this putative class action against Eisenhower Medical Center ("EMC") and Pre-Employ.com, Inc., ("PE") (collectively, "Defendants"), under the Fair Credit Reporting Act ("FCRA") and California's Unfair Competition Law ("UCL") in the District Court for the Eastern District of California on May 23, 2016. ("Complaint," Dkt. No. 1.) On July 26, 2017, EMC filed a motion to transfer venue, (Dkt. No. 7), and a motion to dismiss. (Dkt. No. 8.) On July 29, 2016, EMC filed an Anti-SLAPP motion. (Dkt. No. 11.) Plaintiff opposed EMC's motion to transfer on August 11, 2016. (Dkt. No. 13.) On August 16, 2016, PE filed its motion to dismiss. (Dkt. No. 16.) Plaintiff opposed both

motions to dismiss on October 7, 2016. (Dkt. Nos. 23 & 34.) On October 21, 2016, Plaintiff filed an Ex Parte Application to compel Defendants to participate in limited Rule 26 discovery for the purpose of gathering evidence to oppose EMC's Anti-SLAPP Motion. (Dkt. No. 29.) On November 1, 2016, Defendants filed oppositions to Plaintiff's Application. (Dkt. Nos. 32 & 33.) On November 3, 2016, Judge England denied Plaintiff's Ex Parte Application, granted the motion to transfer venue, and denied both motions to dismiss as well as the motion to strike without prejudice. (Dkt. No. 34.)

The case was transferred to this Court on November 4, 2016. (Dkt. No. 37.) On November 22, 2016, EMC refiled its motion to dismiss, ("MTD1," Dkt. No. 40-1), and a renewed Anti-SLAPP Motion. ("ASM," Dkt. No. 41-1.) EMC filed the following documents in support of its Anti-SLAPP Motion:

- Declaration of Erin Davis (Dkt. No. 41-1);
- Declaration of Linda Riggs (Dkt. No. 41-3);
- Declaration of David Kowalczyk (Dkt. No. 41-4); and
- Compendium of Evidence (Dkt. No. 41-5.)

PE filed its motion to dismiss on November 23, 2016. ("MTD2," Dkt. No. 42-1.) On December 1, 2016, Plaintiff filed a First Amended Complaint. ("FAC," Dkt. No. 43.) EMC filed a motion to strike the FAC, ("MTS1," Dkt. No. 44-1), attaching a Declaration of Adam Rosenthal, (Dkt. No. 44-2), and Exhibits One through Seven. (Dkt. No. 44-3.)  PE filed its motion to strike the FAC on December 15, 2016, ("MTS2," Dkt. No. 45-1), attaching a Declaration of Timothy J. Lepore, (Dkt. No. 45-2), and Exhibits A through G. (Dkt. Nos. 45-3 through 45-9.)

On December 30, 2016, Plaintiff filed oppositions to Defendants' motions to strike the FAC. ("Opp1," Dkt. No. 46; "Opp2," Dkt. No. 47.) In support, Plaintiff filed the following documents:

- Declaration of Duncan MacDonald (Dkt. No. 48);
- Declaration of Kevin Eng (Dkt. No. 49);
- Exhibits one through thirteen (Dkt. No. 50); and
- Amended Exhibits in opposition (Dkt. No. 51.)

**B. Factual Allegations and Claims**

The following facts are drawn from Plaintiff's Complaint. Plaintiff, a resident of Pittsburgh, applied for employment with EMC, a not-for-profit corporation incorporated in California, with its principal place of business in Rancho Mirage, California. (Complaint at 2.) As part of the application process, Plaintiff was required to submit to a background check performed by PE, a corporation incorporated in California with its principal place of business in Redding, California. (Id.) Plaintiff and Defendants dispute whether Plaintiff was actually offered employment with EMC. (Complaint at 2; Dkt. No. 7 at 6.) In any event, Plaintiff alleges that EMC and PE violated

the FCRA and UCL by improperly investigating, preparing, procuring, or causing the procurement of credit or consumer reports of Plaintiff and members of the putative class without providing proper notice, making the proper disclosures, or obtaining the proper authorizations or certifications. (Complaint at 6, 8.)

Plaintiff brings two causes of action against EMC and PE: (1) violation of Federal Credit Reporting Act, 15 U.S.C. § 1681a, et seq. (Id. at 5); and (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. (Id. at 8.) Plaintiff seeks statutory and punitive damages, restitution or disgorgement of profits, injunctive relief, as well as attorney's fees and costs. (Id. at 9.) The Complaint leaves unclear whether Plaintiff's causes of action arise from Defendants' failing to disclose what they considered during the confidential medical peer review process or whether such claims arise from Defendants' antecedent actions. (See FAC.) Unlike the standard of review for motions to dismiss, the Court is not required to presume Plaintiff's allegations are true when resolving EMC's Anti-SLAPP Motion. See infra Part II.A.2. As such, the recitation of relevant facts varies inextricably with the scope of the Court's review for EMC's Anti-SLAPP Motion and for Defendants' motions to dismiss.

## II. DISCUSSION

**A. Defendants' Motions to Strike**

### 1. Motions to Strike Plaintiff's FAC Under Rule 15

Plaintiff did not seek leave of this Court or obtain Defendants' written consent prior to filing his First Amended Complaint. (See FAC.) On that basis, both Defendants move to have Plaintiff's amended complaint stricken for failure to comply with Rule 15 of the Federal Rules of Civil Procedure.[1] (MTS1 & 2 at 6-7.) Defendants argue that Plaintiff waived his right to amend his complaint as a matter of course—i.e., by September 6, 2016—by opposing Defendants' motions to dismiss on October 7, 2016. (Id. at 8, 11.)

Plaintiff, however, argues that Judge England's order "denying all of Defendants' pleading motions without prejudice," thereby "returning the parties to their original positions," "refreshed" Plaintiff's right to amend as a matter of course under Rule 15(a). (Opp 1 & 2 at 15.) Defendants counter that transfer of this case did not affect its procedural posture or restart the twenty-one-day period. (MTS1 & 2 at 9.) In support, PE points out that the language of Rule 15(a) is unambiguous in delineating the circumstances in which Plaintiff may amend as a matter of course and argues that none of those circumstances apply here. (MTS2 at 10-11.) EMC draws additional support from the Advisory Committee Notes on the 2009 Amendments, which specifically disclaim that there is a right to more than one opportunity to amend as a matter of course. (MTS1 at 9.) With respect to amending as a matter of course, Rule 15(a) states:

---

[1] Subsequent references to "Rule" refer to the Federal Rules of Civil Procedure unless otherwise indicated.

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Id.

As described above, after the period for amending as a matter of course has lapsed, FRCP Rule 15(a)(2) only allows for the amendment of a pleading by stipulation of the parties or leave of court. Fed. R. Civ. Pro. 15(a)(1), (a)(2). Here, the time period for amending as a matter of course passed twenty-one days after PE served its responsive pleading, which was August 16, 2016. (Dkt. No. 16.) The transfer of the case to this Court did not alter this deadline. See Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955) ("An order transferring it to another district does not end but preserves it as against the running of the statute of limitations and for all other purposes."). Plaintiff did not file his FAC until December 1, 2016, which is not within the time for amending as a matter of course. (See FAC.) Plaintiff also did not obtain leave from this Court or written consent from Defendants. Therefore, the FAC was improperly filed. Accordingly, the Court GRANTS Defendants' motions and STRIKES the FAC.

### 2. EMC's Motion to Strike Plaintiff's Complaint Under California's Anti-SLAPP Statute

EMC argues that Plaintiff's Complaint must be dismissed under California Code of Civil Procedure section 425.16 because his claims are based on EMC's refusal to turn over confidential communications concerning its peer review process. (ASM at 19-22.) According to EMC, California's Anti-SLAPP statute applies because the confidential peer review of Plaintiff's employment application is an "official proceeding" authorized by law or, alternatively, constitute protected communications in connection with an issue of public interest. (Id.) Federal courts must apply state substantive law to supplemental state law claims. Hanna v. Plumer, 380 U.S. 460 (1965). As such, this Court must apply California's Anti-SLAPP statute to Plaintiff's UCL claim. See Shady Grove Orthopedic Associates v. Allstate Insurance Co., 559 U.S. 393 (2010); Batzel v. Smith, 333 F.3d 1018 (9th Cir.2003)(holding that California Civil Procedure Code section 425.16 applies in federal court).

California Civil Procedure Code section 425.16 ("Section 425.16") permits a defendant to bring an anti-SLAPP motion to dismiss certain state law claims. Cal. Civ. Proc. Code § 425.16. This statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001). Section 425.16(g) "provides that the filing of an anti-SLAPP motion automatically stays all further discovery until the court rules on the motion." Id. at 846. It mandates that courts consider first "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity," and "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a

probability of prevailing on the claim." Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002).

With respect to the second inquiry under Section 425.16, the Ninth Circuit has held that in order to establish the probability of prevailing, "the plaintiff must show that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 648 (9th Cir. 2009). In short, the statute "create[s] a default rule that allows the defendant served with a complaint to immediately put the plaintiff to his or her proof before the plaintiff can conduct discovery." Id. (quoting Rogers v. Home Shopping Network, Inc., 57 F. Supp. 2d 973, 980 (C.D. Cal. 1999)). Additionally, in federal court an Anti-SLAPP motion may be granted, while dismissing the claims without prejudice. Verizon Delaware, Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004).

Accordingly, EMC must first make a prima facie showing that Plaintiff's cause of action targets conduct defined as "protected activity" under Section 425.16(e). Once this threshold showing has been made, the burden shifts to Plaintiff to show he has a reasonable probability of prevailing on his UCL claim. However, if the evidence attached in support of EMC's Motion defeats an element of Plaintiff's claim then the Anti-SLAPP Motion will be granted. Flatley v. Mauro, 39 Cal. 4th 299, 335 (2006).

### a. Prima Facie Showing of a Protected Act

EMC maintains that Plaintiff mistakenly believes that EMC used an outside investigation agency to perform a background check on him, and that it denied Plaintiff employment as a result of that investigation. (ASM at 15.) EMC argues that the discussions of its medical staff "are protected by the anti-SLAPP statute, as they were made in connection with an issue under consideration in an official proceeding, and concerned a matter of public interest." (Id. at 16.)

To invoke Section 425.16, the sued-upon conduct must be "in connection with a public issue." Cal. Civ. Proc. Code § 425.16. Subsection (e) defines an "act in furtherance of a person's right of petition or free speech . . ." as:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or

>  (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Id. at subd. (e). A defendant who invokes either subparagraph (1) or subparagraph (2) of subdivision (e) of Section 425.16 need not "separately demonstrate that the statement concerned an issue of public significance." Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1123 (1999).

In deciding whether the initial "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Navellier v. Sletten, 29 Cal. 4th 82, 89, 52 P.3d 703, 709 (2002). The California Supreme Court in Kibler v. Northern Inyo County Local Hosp. Dist., 39 Cal. 4th 192 (2006), held that "a hospital's peer review qualifies as 'any other official proceeding authorized by law' under subparagraph (2) of subdivision (e) and thus a lawsuit arising out of a peer review proceeding is subject to a special motion under Section 425.16 to strike the SLAPP suit." Id. at 198. The Court concluded that the review procedure qualified as an "official proceeding authorized by law" under Section 425.16 subdivision (e)(2) "because that procedure is required under Business and Professions Code section 805 et seq., governing hospital peer review proceedings." Id. at 99.

Kibler emphasized that California Business and Professions Code section 809, subdivision (a)(8) requires acute-care facilities, such as EMC, to include in their bylaws a provision for conducting peer review. Id. at 200. Further, prior to granting staff privileges, a hospital must request a report from the Medical Board of California indicating whether the applicant has at some other medical facility "been denied staff privileges, been removed from a medical staff, or had his or her staff privileges restricted." Bus. & Prof. Code § 805.5, subd. (a). (hereinafter, "Section 805.") Failure to comply with that subsection is a misdemeanor. Id. at subd. (c). The court in Kibler also noted that the hospital's decisions resulting from peer review proceedings are subject to review by administrative mandate, which in the court's view, "accorded a hospital's peer review decisions a status comparable to that of quasi-judicial public agencies." Id.

The definition of "peer review body" under California Business and Professions Code section 805 includes: "A medical or professional staff of any health care facility or clinic licensed under Division 2 (commencing with Section 1200) of the Health and Safety Code or of a facility or of a facility certified to participate in the federal Medicare program as an ambulatory surgical center." Cal. Bus. & Prof. Code § 805. EMC is a nonprofit hospital with 463 beds and operates more than twenty outpatient service clinics that are staffed by EMC employees and physicians. (ASM at 9.)

EMC, therefore, is subject to the reporting requirements and mandatory peer review prescribed by Section 805 any time it considers granting hospital privileges to a new employee. Cal. Bus. & Prof. Code § 805. Based on the evidence presented, any information obtained by EMC about Plaintiff considered during this peer review process would be communications in

connection with an official proceeding as defined by California's Anti-SLAPP Statute. Mindy's Cosmetics, Inc. v. Dakar, 611 F.3d 590 (9th Cir. 2010) (describing the filing of a trademark application as a communication in connection with an "official proceeding" because it seeks official action in a process governed by statute). Once a court determines that the defendant's conduct was in connection with an official proceeding, it need not determine whether the Anti-SLAPP remedy would also be available as speech made in connection with a matter of public interest. Id. at 203. As such, the Court does not address this alternative basis to find EMC's conduct protected under subdivision (e) of California Code of Civil Procedure section 425.16.

### b. Plaintiff's Probability of Prevailing

Plaintiff alleges that Defendants' FCRA violations constitute unlawful or fraudulent business practices under the UCL. (Complaint at 8.) The only harm alleged to have resulted from these unlawful or unfair business practices is that Plaintiff and Class Members "suffered invasion of their privacy regarding their personal information." (Id.) Plaintiff cannot establish a legally and factually sufficient prima facie UCL claim because Plaintiff cannot establish statutory standing. To have standing to bring a private cause of action under the UCL, one must allege an economic injury. Cal. Bus. & Prof. Code § 17204. (stating actions for relief pursuant to California Business and Professions Code section 17200 can only be prosecuted by a "person" who has "suffered injury in fact and has lost money or property as a result of the unfair competition."); Hinojos v. Kohl's Corp., 718 F.3d 1098, 1104 (9th Cir. 2013) ("The 'lost money or property' requirement therefore requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant."); Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 320–21 (2011) (stating that "now private standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition.").

Plaintiff's failure to allege any economic injury resulting from EMC's alleged unfair or unlawful business practice defeats a critical element of Plaintiff's claim. Cf. Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1183 (9th Cir. 2013) (citing Vargas v. City of Salinas, 46 Cal.4th 1, 20 (2009)) ("A reviewing court should grant the motion if, *as a matter of law,* the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.") (internal quotation marks omitted).  Since Plaintiff's failure to plead the requisite injury to establish standing forecloses finding that Plaintiff has demonstrated a probability of prevailing on his UCL claim, EMC's Anti-SLAPP Motion is GRANTED, and Plaintiff's UCL claim is thereby DISMISSED WITH LEAVE TO AMEND.

### B. Defendants' Motions to Dismiss

Both Defendants move to dismiss Plaintiff's claims under Rule 12(b)(1) and Rule 12(b)(6). (MTS1 & 2.)

### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review on a Rule 12(b)(6) motion to dismiss is limited to the contents of the complaint, the Court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003). Under the incorporation by reference doctrine, the Court may consider documents not attached to the pleading if: (1) those documents are referenced extensively in the complaint or form the basis of the plaintiff's claim; and (2) if no party questions their authenticity. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

**2. PE's Motion to Dismiss**

PE argues that Plaintiff's complaint fails to state a claim under Rule 12(b)(1) and Rule 12(b)(6). (MTD2 at 13.) Specifically, PE argues: (a) Plaintiff's claims under Section 1681b(b)(2) and (b)(3) fail as a matter of law because as a Credit Reporting Agency ("CRA"), PE is not a "user" of a background report, and therefore cannot take adverse employment action against Plaintiff, (Id. at 13); (b) Plaintiff's claim under Section 1681e is insufficiently alleged because Plaintiff fails to identify which of PE's procedures or policies caused the purported injury or how such procedures or policies are unreasonable (Id. at 12.); (c) Plaintiff lacks Article III standing to assert his FCRA claims because the alleged invasion of his privacy is not a concrete harm (Id. at 19); (d) even if invasion of privacy were a cognizable injury under the FCRA, Plaintiff has not adequately alleged he did not authorize the procurement of the consumer report, so he has no plausible privacy interest that could be impaired by PE's provision of such report (Id. at 20); (e) without adequately alleging an FCRA violation, Plaintiff cannot state a UCL claim (Id. at 21); and (f) even if Plaintiff could adequately allege an FCRA violation, Plaintiff cannot state a claim under the UCL because Plaintiff has failed to allege an economic injury. (Id.) Each of the aforementioned arguments will be addressed in turn.

Plaintiff alleges, generally, that PE: "(a) failed to obtain requisite notices, disclosures and authorizations in violation of the FCRA; (b) conducted investigation and/or reporting in violation of the FCRA; (c) obtained Credit Information in violation of the FCRA; (d) disclosed Credit Information to employers in violation of the FCRA; and/or (e) violated the UCL." (Complaint at 4.)  In Plaintiff's first claim for relief, Plaintiff alleges violations of 15 U.S.C. § 1681, et seq, and includes fourteen subsections of the FCRA allegedly violated without identifying: (1) which Defendant violated which FCRA provision, and (2) how each Defendant violated such provision.  (Id. at 6.)

The Court will not entertain claims that users and CRAs are jointly liable for violating the same provision of the FCRA because the FCRA imposes different duties on users of credit reports than it does on consumer reporting agencies. A CRA has a duty to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the [credit] report relates," 15 U.S.C. § 1681e(b), and to furnish a credit report only when the report will be used for a proper purpose. 15 U.S.C. §§ 1681e(a), 1681b(a). Subsection (b) describes the "[c]onditions for furnishing and using consumer reports for employment purposes," and is subdivided into three subsections. 15 U.S.C. § 1681b. The first subsection expressly applies to consumer reporting agencies. Id. Under that subsection, CRAs are prohibited from furnishing consumer reports without first receiving certification from the "person[s] who obtain[ ] such report[s]" that they complied with section (b)(2), will comply with section (b)(3) if it becomes applicable, and will not use the consumer report in violation of any equal employment opportunity law or regulation. 15 U.S.C. § 1681b(b)(1).

### a. Plaintiff's Claim Under Section 1681b(b)(2) and (3)

The definition of a "consumer reporting agency," as "any person which . . . assembl[es] or evaluat[es] consumer . . . information . . . for the purpose of *furnishing* consumer reports to third parties," frames the role of a CRA as a provider of information for the use of others. 15 U.S.C. § 1681a(f). As the statute requires the report user to certify compliance with sections (b)(2) and (b)(3) to the credit-reporting agency, fault for any failure to obtain the requisite certification of compliance most logically falls on the user of the consumer report. See Obabueki v. Int'l Bus. Machs. Corp., 145 F. Supp. 2d 371, 393 (S.D.N.Y. 2001), aff'd, 319 F.3d 87 (2d Cir. 2003) ("[Section 1681b(b)] contains three subsections that set forth certain obligations for consumer reporting agencies and users such as employers. . . . [E]ach of the subsections need not, and does not, prescribe obligations for both agencies and users. The second and third subsections both affect users."); Williams v. First Advantage, 155 F. Supp. 3d 1233, 1242 (N.D. Fla. 2015) ("This Court finds as a legal matter that § 1681b(b)(3)(A) does not impose any obligations on CRAs in their capacities as CRAs . . .").

The Ninth Circuit specifically noted that the FCRA "has been drawn with extreme care, reflecting the tug of the competing interests of consumers, CRAs, furnishers of credit information, and users of credit information." Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1060 (9th Cir. 2002). Without more specific allegations as to each Defendants' role in violating the FCRA, the Court cannot determine whether the allegations are enough to raise Plaintiff's right to relief above a speculative level. The most logical reading of the statute precludes liability for CRAs under subsection (2) and (3). Since there is nothing in the Complaint to suggest that PE acted as a "user" of credit information and section 1681b(b)(2) and (3) only apply to "users," Plaintiff's claim against PE under those subsections fails as a matter of law. See 15 U.S.C. § 1681b. Accordingly, Plaintiff's claims against PE under subsection (b)(2) and (3) are DISMISSED.

### b. Plaintiff's Claim Under Section 1681b(f)

Plaintiff alleges that PE violated Section 1681b(f). (Complaint at 6.) To prove a violation of FCRA Section 1681b(f), plaintiffs "must show that credit information was obtained for an impermissible purpose." Perretta v. Capital Acquisitions & Management Co., 2003 WL 21383757, at *5 (N.D. Cal. May 5, 2003) (quoting Edge v. Professional Claims Bureau, Inc., 64 F. Supp. 2d 115, 117 (E.D.N.Y. 1999)); see also 15 U.S.C. § 1681b(f) (2013). A complaint that merely states in a conclusory fashion that Defendants' use of a credit report was not for a permissible purpose will be dismissed for failure to plausibly allege a violation of the FCRA. Salmas v. Portfolio Recovery Assocs., LLC, 2013 WL 6182614, at *2 (C.D. Cal. Nov. 25, 2013) (citing Pyle v. First Nat'l Collection Bureau, 2012 WL 1413970, at *3 (E.D.Cal. Apr.23, 2012)).

The Complaint fails to identify how the purpose for which the credit report was obtained was not permissible since using credit information for employment purposes is a permissible use under Section 1681b. See 15 U.S.C. § 1681b. Plaintiff's claim against PE for failing to certify that a prospective user of a consumer report is obtaining the report for a permissible purpose is

therefore, insufficiently pled. Accordingly, Plaintiff's claim against PE under subsection (f) of Section 1681b is DISMISSED WITH LEAVE TO AMEND.

### c. Plaintiff's Claim Under Sections 1681k(a) and 1681e

Plaintiff also alleges that PE violated 15 U.S.C. § 1681k(a). (Complaint at 6.) That section requires a CRA that "furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment" to either: (1) notify the consumer that such information is being reported "at the time" it is reported or (2) "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." 15 U.S.C. § 1681k(a). Hence, to state a claim against PE for failure to comply with Section 1681k(a), Plaintiff must allege that PE neither provided notice nor maintained strict procedures. Id. Plaintiff cannot state a claim for violation of this subsection because the Complaint contains no factual allegations for the Court to reasonably infer that PE either reported public record information it knew was likely to have an adverse effect on Plaintiff's ability to obtain employment or failed to maintain strict procedures to ensure the accuracy of this public record information. The bare recitation of elements contained in the statute's text does not provide PE with fair notice of the grounds upon which Plaintiff's entitlement to relief rests. See Twombly, 550 U.S. at 555; Starr, 652 F.3d at 1216.

Nor can Plaintiff state a claim against PE for failing to maintain reasonable procedures in providing consumer credit reports under Section 1681e without alleging facts from which to infer that PE's procedures caused an identifiable FCRA violation. 15 U.S.C. § 1681e. To make out a prima facie violation of duty to follow reasonable procedures to assure maximum possible accuracy, under Fair Credit Reporting Act (FCRA), a consumer must first present evidence tending to show that a consumer reporting agency (CRA) prepared a report containing inaccurate information. Consumer Credit Protection Act § 607, 15 U.S.C.A. § 1681e(b). Still, a CRA will not be found civilly liable for preparing an inaccurate report if it can establish that an inaccurate report was generated despite the fact that it followed reasonable procedures. Taylor v. First Advantage Background Servs. Corp, No. 15-CV-02929-DMR, 2016 WL 4762268 (N.D. Cal. Sept. 13, 2016). Since Plaintiff does not allege any inaccuracies in the consumer report at issue and does not include any assertions from which to infer PE failed to follow reasonable procedures to assure its maximum possible accuracy, Plaintiff's claim against PE grounded in its failure to properly investigate Plaintiff or failure to maintain reasonable procedures is insufficiently plead. As such Plaintiff's claim against PE for violating Sections 1681k and 1681e is DISMISSED WITH LEAVE TO AMEND.

### d. Sufficiency of Allegations to Plead Remaining FCRA Violations[2]

Plaintiff's remaining FCRA claims against PE are inadequately plead. For one thing, Plaintiff does not allege any actual damages. Absent actual damages, Plaintiff can only seek statutory damages under the FCRA, which requires proof that Defendants' alleged FCRA violation was willful. 15 U.S.C. § 1681 n(a); Yeagley v. Wells Fargo & Co., 2008 WL 171083, * 5 (N.D. Cal. 2008).

In Safeco Insurance Company of America v. Burr, the Supreme Court held that the FCRA's use of the term "willfully" requires a plaintiff to show that the defendant's conduct was intentional or reckless. 551 U.S. 47, 57 (2007). Recklessness is "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. at 68. (citation and internal quotation marks omitted). Put differently, "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reason that was merely careless." Id. at 69. To determine whether the defendant acted "willfully," the Spokeo Court considered whether the defendant's interpretation of the FCRA "ha[d] a foundation in the statutory text" and whether the defendant had "guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took." Id. at 69-70.

The Spokeo Court strongly suggested that the "objective unreasonableness" of defendant's interpretation is a question of law by analogizing this inquiry to the "clearly established" inquiry employed when determining whether qualified immunity applies. See id. at 70 (citing Saucier v. Katz, 533 U.S. 194, 202 (2001)). Accordingly, courts may determine whether a particular interpretation of the FCRA's requirements is "objectively unreasonable" on a motion to dismiss. See, e.g., Goode v. LexisNexis Risk & Info. Analytics Grp. Inc., 848 F. Supp. 2d 532, 543-46 (E.D. Pa. 2012) (considering court cases and FTC guidance on a motion to dismiss); see also Long v. Tommy Hilfiger U.S.A. Inc., 671 F.3d 371, 378 (3d Cir. 2012) (affirming dismissal upon a motion to dismiss because a defendant's interpretation, "although erroneous, was at least objectively reasonable").

Plaintiff's Complaint contains no allegations that allow the Court to infer that PE's interpretation of its obligations under the FCRA was objectively unreasonable. In fact, absent from the Complaint are sufficient allegations for the Court to identify what role PE played in the alleged FCRA violations. Similarly, Plaintiff's FCRA claim grounded in a negligence theory of liability is insufficiently alleged. While the FCRA permits recovery for emotional distress and

---

[2] Since the Complaint does not distinguish between PE and EMC in listing the FCRA violations that undergird Plaintiff's claims, the Court is left to wonder which specific FCRA provisions each Defendant is alleged to have violated. For that reason, the Court discusses the deficiencies in Plaintiff's Complaint that preclude Plaintiff from stating a claim under any of the provisions of the FCRA complaint by referring to "Remaining FCRA Violations."

humiliation, Consumer Credit Protection Act, § 602 et seq., the Complaint fails to plausibly allege causation between PE's conduct and Plaintiff's asserted privacy injury.

The Court finds that the Complaint fails to include sufficient factual allegations to plausibly infer that PE willfully violated any of the provisions of §1681 et seq. In like manner, absent from Plaintiff's Complaint are sufficient allegations for the Court to infer that Plaintiff suffered actual damages—economic or otherwise—or that PE's conduct was the proximate cause of those damages. The Complaint must include at least enough factual allegations to put PE on notice of how it acted negligently to state a claim under the FCRA. Accordingly, Plaintiff's claim against PE premised on any residual FCRA violations contained in the Complaint is DISMISSED WITH LEAVE TO AMEND.

### e. Plaintiff's UCL Claim

Plaintiff's UCL claim under the unlawful prong is predicated on stating a claim under the FCRA. Since Plaintiff has not alleged an economic injury required to establishing standing under the UCL's "unfairness prong," See Cal. Bus. & Prof. Code §§ 17204, 17535, Plaintiff's UCL claim against PE is DISMISSED WITH LEAVE TO AMEND.

### 3. EMC's Motion to Dismiss

As discussed, See above, the Anti-SLAPP statute only applies to Plaintiff's state law claim. With respect to Plaintiff's remaining FCRA claim, EMC argues that: Plaintiff's Complaint fails to allege all of the elements to state a claim under Rule 8, and Plaintiff lacks Article III standing because he has not plead a cognizable injury. (MTD1 at 8,9.) Plaintiff alleges generally that EMC: (a) failed to give notices, make adequate disclosures, and obtain authorizations from Plaintiff and Class members in violation of the FCRA, (b) "procured investigation or reporting on actual or prospective employees in violation of the FCRA," (c) "received Credit Information in violation of the FCRA," and (d) violated the UCL. (Complaint at 4.)

With respect to the FCRA provisions that specifically regulate the conduct of "users" of consumer reports in the employment context, Plaintiff alleges EMC violated Sections 1681b(b)(2)(A), 1681b(b)(3)(ii), 1681b(f), and 1681d of the FCRA. (Id. at 6-7.)

### a. Overview of User Obligations Under the FCRA

The FCRA allows employers to obtain "consumer reports" to evaluate individuals for employment as long as they comply with specific guidelines. 15 U.S.C. § § 1681a(h), 1681b(a)(3)(B). Prospective employers, like EMC, must notify applicants that they are obtaining or may obtain a consumer report for employment purposes in "clear and conspicuous" writing. See 15 U.S.C. § 1681b(b)(2)(A). Further, the document must "consist solely of the disclosure," and cannot contain any extraneous information. Id. If an employer seeks to obtain an "investigative consumer report" there are additional required disclosures, including a copy of the FCRA Summary of Rights form. See 15 U.S.C. § § 1681a(e), 1681d.

Written consent from the applicant is also a prerequisite to obtaining a written report. See 15 U.S.C. § 1681b(b)(2)(A). In addition, employers must certify to the consumer reporting agency from whom they intend to obtain the report that they have a "permissible purpose" for requesting the report and that they will comply with the relevant FCRA provision and equal opportunity laws.

Finally, before an employer takes any adverse action against an applicant or employee based in whole or in part on a consumer report, the employer must provide the individual with a pre-adverse action notice. See U.S.C. § 1681b(b)(3). The pre-adverse action notice must include a copy of (a) the consumer report and (b) the new FCRA Summary of Rights Form. Id. The purpose of this notice is to give the subject of the report an opportunity to review the report and discuss or explain any discrepancies. Id.

### b. Plaintiff's Claims under 15 U.S.C. § 1681b(b)(2)(A) and (f)

As discussed, Plaintiff alleges that EMC failed to provide Plaintiff with clear and conspicuous disclosure in a document consisting solely of the disclosure, failed to obtain requisite authorization, and failed to certify in accordance with Section 1681e that the report was being obtained for a permissible purpose, and would only be used for that purpose. (Complaint at 6-7.)

Plaintiff must allege causation and injury in fact to establish Article III standing to sue for EMC's alleged noncompliance with the standalone disclosure and authorization requirements under Section 1681b(b)(2)(A)(i) and (ii), as well as the permissible purpose certification requirement under Section 1681b(f). Lujan v. Defs. of Wildlife, 504 U.S. 555, 568 (1992). The Supreme Court in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), considered what must be pled to establish standing when a plaintiff alleges violations of the FCRA's notice and disclosure requirements and concluded that Article III "requires a concrete injury even in the context of a statutory violation." Id. at 1550. The Court rejected the notion that "a bare procedural violation, divorced from any concrete harm" could satisfy the injury-in-fact requirement of Article III. Id. at 1549 (citing Summers v. Earth Island Institute, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing")).

That said, the Court observed that in some limited circumstances procedural violations may entail a degree of risk sufficient to meet the concreteness requirement. Spokeo, 136 S. Ct. at 1550. The Court cited a group of voters' inability to obtain information that Congress decided to make public, or advocacy organizations being prevented from accessing information subject to public disclosure under a Federal statute, as examples of procedural violations that have been found sufficient to constitute an injury under Article III. Id. Still, the Court made clear that absent allegations of an identifiable risk of some concrete harm stemming from the consumer reporting agencies' failure to provide requisite notice, the plaintiff in Spokeo could not establish standing under Article III. See id. at 1550 (finding that since "[a] violation of one of the FCRA's

procedural requirements may result in no harm" a Plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation.").

Here, Plaintiff has only pled a bare procedural violation. Absent from his complaint, is any mention that EMC actually failed to inform him that it intended to perform a background check or that he was unaware that a background check would be conducted, which may give rise to the type of informational injury previously found sufficient to confer standing. Federal Election Comm'n v. Akins, 524 U.S. 11, 20–25 (1998); Public Citizen v. Department of Justice, 491 U.S. 440, 449 (1989). As such, EMC's failure to perform its statutory obligations, without more, is insufficient to confer standing under Spokeo. And while invasion of privacy may constitute a cognizable harm in some circumstances, Plaintiff fails to adequately allege how EMC's conduct caused the invasion of such interest. The Court finds that Plaintiff's Complaint contains insufficient allegations to plausibly infer that Plaintiff suffered any concrete harm due to EMC's purported failure to provide Plaintiff with requisite disclosures, obtain necessary authorizations and certifications, or provide Plaintiff with a summary of his consumer rights. Accordingly, Plaintiff's claim against EMC under Section 1681b, subsections (b)(2) and (f) is DISMISSED WITH LEAVE TO AMEND.

### c. Plaintiff's Claims under 15 U.S.C. § 1681b(b)(3)(ii) and § 1681d

Plaintiff alleges that EMC violated 15 U.S.C. § 1681b(b)(3)(ii) by taking an adverse employment action while failing to provide him and members of the putative class: (a) a description in writing of their rights under the FCRA as "consumers," and (b) a copy of the report on which the adverse employment action was based. (Complaint at 6.) Plaintiff also alleges that EMC violated 15 U.S.C. § 1681d in failing to: (a) notify Plaintiff and Class members that an investigative consumer report may be made through a disclosure in writing that must be sent to the consumer no later than three days after the date at which the report was first requested, (b) provide Plaintiff and Class Members a summary of their right to request additional disclosures under subsection (b) and a written summary of consumer rights, (c) certify to the CRA that the person requesting the report has made the aforementioned disclosures to consumers, and (d) provide Plaintiff and Class Members with disclosure of the nature and scope of the investigation that is the subject of the investigative consumer report upon written request by Plaintiff and Class Members. (Id.); See also 15 U.S.C. § 1681d. (hereinafter, "Section 1681d").

Section 1681b(b)(3)(A) mandates that users disclose the credit report to job applicants if the user is going to take adverse action against the job applicant based in whole or in part on the report. See 15 U.S.C. § 1681(b)(3)(A) (hereinafter, "Section 1681b(b)(3)").  For Plaintiff to state a claim under Sections 1681b and 1681d, he must adequately allege that: (a) the information he requested is a "consumer report" under the FCRA; (b) EMC's rescission of the offer of employment constitutes an "adverse employment action"; and (c) that the adverse employment action is "based in whole or in part on" the credit report. 15 U.S.C. § 1681m(a). Cf. Safeco Ins. Co. of America v. Burr, 551 U.S. 47 ("[A]n increased rate is not 'based in whole or in part on' the credit report unless the report was a necessary condition of the increase."). As discussed above, to bring a cause of action under the FCRA, Plaintiff must also allege that EMC's conduct was willful.

Under the FCRA, Plaintiff is a "consumer," § 1681a(c) and EMC is a "person." 15 U.S.C. § 1681a(b). Thus, if the information Plaintiff requested falls under the definition of "consumer reports," EMC was required under Sections 1681a(d)(1)(B) and 1681b(b)(3)(A) to send Plaintiff a pre–adverse action letter containing a copy of the report and a description of his rights before taking any "adverse action" against him. 15 U.S.C. § § 1681a(d)(1)(B) & 1681b(b)(3)(A).

As mentioned above, if a plaintiff can allege a plausible risk of harm precipitated by a procedural violation, this may be sufficiently concrete to constitute an injury-in-fact. Here, failure to comply with the notice and disclosure requirements prior to taking an adverse employment action could plausibly constitute more than a mere procedural violation if it deprived Plaintiff of the right to respond before adverse action was taken. The right to discuss reports with employers or respond before action is taken has been described as the "clear purpose" of section 1681b(b)(3)(A). (See Letter from William Haynes, Attorney, FTC, to Harold R. Hawkey, Attorney, Employers Association of New Jersey (Dec. 18, 1997), available at http://www.ftc.gov/os/statutes/fcra/hawkeycb.htm). If Plaintiff was deprived of the right to respond as a result of EMC's noncompliance with the FCRA's notice and disclosure requirements, he could possibly allege the type of statutory violation that presents a risk of concrete harm.

That said, Plaintiff's Complaint falls short of stating a claim under Rule 12(b)(6) because it contains insufficient factual allegations to identify what, if any, adverse employment action was taken, or to infer that the purported adverse employment action was taken "based in whole or in part on" the credit report. 15 U.S.C. § 1681m(a). The Complaint does not even sustain a reasonable inference that the information on which EMC's decision was based constitutes a "consumer report" as defined by Section 1681a.[3]

---

[3] The term "consumer report" means:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
>
>> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>> (B) employment purposes; or
>> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C.A. § 1681a. Excluded from the definition of "consumer report," however, is any communication by a previous employer about the applicant's job performance because Section 603(d)(2)(A)(i) specifically exempts "experiences between the consumer and the person making the report" from the definition of "consumer report" in the FCRA. 15 U.S.C. § 1681a(o). The

    The FCRA defines "adverse action" to include the "denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii). The requirements of Section 1681b(b)(3) could not be triggered until there was, at the very least, an intent on the part of EMC to decline Plaintiff employment. All the Complaint alleges is that Plaintiff was "an applicant for employment and/or an employee of Defendant" EMC. (Complaint at 2.) Since it is unclear what EMC did that adversely affected Plaintiff's employment, there is no way for the Court to determine whether that adverse action was based in whole or in part on a consumer report.

    Further, for Plaintiff to bring claims under Section 1681d, Plaintiff must allege that an "investigative consumer report" was procured without proper authorization or disclosure. 15 U.S.C. § 1681d. Based on the allegations contained in the Complaint, it is unclear if Plaintiff alleges that an investigative consumer report was improperly procured or only that a consumer report was improperly procured. This distinction is important to determine whether Plaintiff can state a claim under Section 1681d of the Act. Belshaw v. Credit Bureau of Prescott, 392 F. Supp. 1356, 1361 (D. Ariz. 1975)("Since no investigative consumer report was procured, § 1681d of the Act could not have been violated.").

    Finally, to bring a private cause of action against an employer under the FCRA, Plaintiff must establish either "negligent" or "willful" noncompliance with the Act. 15 U.S.C. § 1681p. The Complaint does not allow for a plausible inference that EMC's interpretation of its statutory duties was "objectively unreasonable." And as mentioned before, the absence of any alleged actual damages precludes Plaintiff from bringing suit for negligent violations of the FCRA. See 15 U.S.C. § 1681o; Banga v. Experian Info. Sols., Inc., 473 F. App'x 699, 700 (9th Cir. 2012) (affirming district court's decision granting summary judgment on claims for negligent violations of the FCRA because plaintiff "failed to raise a triable dispute as to whether defendants' conduct resulted in actual damages"). Accordingly, Plaintiff fails to state a claim under Sections 1681b(b)(3) and 1681d against EMC.

///

///

///

///

///

///

---

Court would need to speculate to infer that the report on which the adverse employment action was based falls within the definition of "consumer report."

## III. CONCLUSION

Based on the foregoing, the Court GRANTS EMC's Anti-SLAPP Motion, thereby DISMISSING Plaintiff's UCL Claim WITH LEAVE TO AMEND, and GRANTS Defendants' motions to dismiss, thereby:

- DISMISSING Plaintiff's claim against PE under subsections (b)(2) and (3) WITHOUT LEAVE TO AMEND;
- DISMISSING Plaintiff's claims against PE and EMC under the residual FCRA provisions WITH LEAVE TO AMEND; and
- DISMISSING Plaintiff's UCL claim against PE WITH LEAVE TO AMEND.

**IT IS SO ORDERED.**