ROPERS, MAJESKI, KOHN & BENTLEY
LAWRENCE BORYS (SBN 60625)
TIMOTHY J. LEPORE (SBN 294247)
445 South Figueroa Street, Suite 3000
Los Angeles, CA 90071-1619
Telephone: (213) 312-2000
Facsimile: (213) 312-2001
Email:      lawrence.borys@rmkb.com
            timothy.lepore@rmkb.com

Attorneys for Defendant
PRE-EMPLOY.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| MARC MARCHIOLI,<br><br>          Plaintiff,<br><br>v.<br><br>PRE-EMPLOY.COM, INC., EISENHOWER MEDICAL CENTER, and DOES 1 THROUGH 10,<br><br>          Defendants. | CASE NO. 5:16-cv-02305-JGB-DTB<br><br>**DEFENDANT PRE-EMPLOY.COM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF MARC MARCHIOLI'S SECOND AMENDED COMPLAINT**<br><br>Fed. R. Civ. P. 12(b)(1) and (6)<br><br>[*Notice of Motion and [Proposed] Order submitted concurrently herewith*]<br><br>**Date**: May 1, 2017<br>**Time**: 9:00 a.m.<br>**Courtroom**: 1<br><br>Hon. Jesus G. Bernal. |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

4839-2188-7813.6

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF MARCHIOLI'S ALLEGATIONS AND EMC'S CONTRADICTING EVIDENCE ................................................... 2

    A.    Marchioli's Second Amended Complaint .................................. 2

    B.    Marchioli Authorized EMC To Procure, And PE To Compile, A Consumer Report On Him ........................................................ 3

III.  ARGUMENT ........................................................................................ 5

    A.    This Court Must Dismiss Marchioli's Complaint Because Marchioli Did Not Allege An Injury In Fact Under Article III Traceable To PE, And Therefore This Court Lacks Subject Matter Jurisdiction Over His Claims Against PE ............................... 5

        1.    Legal Standard Of Review ................................................ 5

        2.    Marchioli's Allegations That PE Violated The FCRA's User Notice And Certification Provisions Are Bare Procedural Violations Divorced Of Any Concrete Harm .......... 6

            a.    The Supreme Court Has Rejected Marchioli's Claim That He Suffered A Concrete Harm From PE Allegedly Failing To Provide EMC The Required Notice Of A User's Obligations Under The FCRA ......... 6

            b.    Marchioli's Claim That PE Violated The FCRA By Failing To Obtain User Certifications From EMC Does Not Satisfy Article III's Requirement That Marchioli Plead A Concrete Harm ................................ 8

    B.    This Court Must Dismiss Marchioli's Claims Against PE Because Marchioli Did Not Allege Sufficient Factual Allegations That PE Violated The FCRA Or California's Unfair Competition Law ................................................................. 12

        1.    Legal Standard Of Review ............................................. 12

        2.    Marchioli Failed To Plead Sufficient Factual Allegations That Make It Plausible PE Violated Any Section Of The FCRA .......................................................................... 13

            a.    Marchioli's Lack Of Possession Of The User Notices And Certifications Does Not Make It Plausible PE Failed To Provide Or Obtain Those Notices And Certifications From EMC ......................... 13

            b.    Independently, Marchioli's Section 1681e Claim Also Failed To State A Claim For Relief Because Marchioli Did Not Plead EMC Used His Consumer Report For An Improper Purpose ................................... 16

            c.    Marchioli Also Failed To Plead Actual Damages, And Therefore He Has No Private Cause Of Action Under Section 1681(o) ................................................. 17

PRE-EMPLOY.COM, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS SAC

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

# TABLE OF CONTENTS
## (continued)

Page

    d.   Similarly, Marchioli Failed To Plead Sufficient Factual Allegations That Make It Plausible PE Willfully Violated The FCRA ........................................ 18

   3.   This Court Should Also Dismiss Marchioli's UCL Claim Because He Lacks Standing, Failed To Plead Any Economic Injury Or A Plausible Claim Under The FCRA, And Is Not Entitled To Injunctive Relief ................................ 19

    a.   Marchioli Lacks Standing To Allege His UCL Claim Because He Did Not Sustain An Economic Injury Caused By PE's Unfair Business Practices ......... 20

    c.   Marchioli Did Not Plead Sufficient Facts To State A Plausible Claim Under The FCRA ............................. 21

    d.   Marchioli's UCL Claim For Restitution Fails As A Matter Of Law Because He Did Not Have A Prior Ownership In The Monies He Seeks To Disgorge ........ 22

    e.   Marchioli's UCL Claim For Equitable Relief Also Fail As A Matter Of Law Because The FCRA Preempts Inconsistent Remedies Under State Law ........ 23

IV.   CONCLUSION ............................................................................. 24

1

## TABLE OF AUTHORITIES

2

**Page**

3

4

**FEDERAL CASES**

5

*Ashcroft v. Iqbal*
      556 U.S. 662 (2009) ................................................................ 12

6

7

*Balistreri v. Pacifica Police Dep't.*
      901 F.2d 696 (9th Cir. 1988) ................................................. 12

8

9

*Banga v. Experian Info. Sols., Inc.*
      473 F. App'x 699 (9th Cir. 2012) .......................................... 17

10

*Bell Atlantic Corp. v. Twombly*
      550 U.S. 544 (2007) ..................................................... passim

11

12

*Bultemeyer v. CenturyLink, Inc.*
      No. CV-14-02530-PHX-SPL, 2017 WL 634516 (D. Ariz. Feb. 15, 2017) ....... 11

13

14

*Chabner v. United Omaha Life Ins. Co.*
      225 F.3d 1042 (9th Cir. 2000) ............................................. 19

15

16

*Clapper v. Amnesty In'tl USA*
      133 S. Ct. 1138 (2013) ...................................................... 5

17

18

*Clegg v. Cult Awareness Network*
      18 F.3d 752 (9th Cir. 1994) ................................................ 13

19

*Dicesari v. Asset Acceptance LLC*
      No. 11-cv-6815, 2012 WL 4108944 (E.D. Pa. Sept. 18, 2012) ......... 23

20

21

*Disalvo v. Intellicorp Records, Inc.*
      No. 1:16 CV 1697, 2016 WL 5405258 (N.D. Ohio Sept. 27, 2016) ....... 11

22

23

*Erickson v. Pardus*
      551 U.S. 89 (2007) .......................................................... 12

24

25

*Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*
      848 F.Supp.2d 532 (E.D.Pa.2012) ...................................... 18

26

27

*Hamilton v. DirecTV, Inc.*
      642 F. Supp. 2d 1304 (M.D. Ala. 2009) ............................... 23

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Kennedy v. Chase Manhattan Bank USA, NA*
    369 F.3d 833 (5th Cir. 2004) ............................................................. 16

*Kirchner v. First Advantage Background Servs. Corp.*
    No. CV 2:14-1437 WBS EFB, 2016 WL 6766944 (E.D. Cal. Nov. 14,
    2016) ...................................................................................................... 11

*Larroque v. First Advantage LNS Screening Sols., Inc.*
No. 15-cv-04684-JSC, 2016 WL 4577257, at *5 (N.D. Cal. Sept. 2016) ................ 9

*Levinson v. Transunion LLC*
    No. CV1600837RSWLPLAX, 2016 WL 3135642 (C.D. Cal. June 2,
    2016) ...................................................................................................... 17

*Long v. Tommy Hilfiger U.S.A., Inc.*
    671 F.3d 371 (3d Cir.2012) ................................................................. 18

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ........................................................................ 5, 6

*Millett v. Ford Motor Credit Co.*
    No. 04-cv-2450-CM, 2006 WL 1301160 (D. Kan. May 9, 2006) ................. 24

*Moran v. Screening Pros, LLC*
    No. 12-cv-05808, 2012 WL 10655744 (C.D. Cal. Sept. 28, 2012) ................ 24

*Poulson v. Trans Union, LLC*
    370 F. Supp. 2d 592 (E.D. Tex. 2005) .............................................. 23

*Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*, No. 11-cv-
    6648 SBA, 2012 WL 3155559 (N.D. Cal. Aug. 2, 2012) ............................ 24

*Raines v. Byrd*
    521 U.S. 811 (1997) ........................................................................ 5, 6

*Rubio v. Capital One Bank*
    613 F.3d 1195 (9th Cir. 2010) ............................................................ 21

*Safeco Ins. Co. of Am. v. Burr*
    551 U.S. 47 (2007) ............................................................................ 18

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- iv -

# TABLE OF AUTHORITIES
## (continued)

Page

*Sandoval v. Experian Info. Sols., Inc.*
No. 16-CV-03344-BLF, 2017 WL 1092361 (N.D. Cal. Mar. 23, 2017) ........... 17

*Seungtae Kim v. BMW Fin. Servs. NA*
LLC, 142 F. Supp. 3d 935, 944 (C.D. Cal. 2015) ............................................ 17

*Shlahtichman v. 1–800 Contacts, Inc.*
615 F.3d 794 (7th Cir.2010) ............................................................................. 18

*Sopak v. Northern Mountain Helicopter Serv.*
52 F.3d 817 (9th Cir. 1995) ............................................................................... 5

*Spokeo, Inc. v. Robins*
136 S. Ct. 1540 (2016) ............................................................................. passim

*Syed v. M-I, LLC*
846 F.3d 1034 ................................................................................................. 11

*Thomas v. Fin. Recovery Servs.*
No. EDCV 12-1339 PSG OPX, 2013 WL 387968 (C.D. Cal. Jan. 31, 2013) .............................................................................................................. 16

*Washington v. CSC Credit Servs., Inc.*
199 F.3d 263 (5th Cir. 2000) ........................................................................... 23

*Wolfe v. Strankman*
392 F.3d 358 (9th Cir. 2004) ............................................................................. 6

CALIFORNIA CASES

*Bank of the West v. Superior Court*
2 Cal.4th 1254 (1992) ..................................................................................... 22

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
20 Cal. 4th 163 (1999) ..................................................................................... 21

*Cortez v. Purolator Air Filtration Prods. Co.*
23 Cal. 4th 163 (2000) ..................................................................................... 23

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal.4th 1134 (2003) .............................................................................. 19, 22

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

# TABLE OF AUTHORITIES
## (continued)

Page

*Kraus v. Trinity Management Services, Inc.*
23 Cal.4th 116, 126-27 (2000) ................................................................ 22

*Kwikset Corp. v. Sup. Ct.*
51 Cal.4th 310 (2011) ................................................................... 20, 21

*Madrid v. Perot Sys. Corp.*
130 Cal. App. 4th 440 (2005) ............................................................. 22

FEDERAL STATUTES

15 U.S.C. § 1681b(b) ...................................................................... passim

15 U.S.C. § 1681d(d) ............................................................................ 8

15 U.S.C. § 1681e(a) ........................................................................ 2, 16

15 U.S.C. § 1681e(d) ...................................................................... passim

15 U.S.C. § 1681s(a) ......................................................................... 23

15 U.S.C. § 1681n ............................................................................. 18

15 U.S.C. § 1681o ............................................................................ 17

CALIFORNIA STATUTES

Cal. Bus. & Prof. Code § 17200 ........................................................... 19

Cal. Bus. & Prof. Code § 17204 ........................................................... 20

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) .................................................................... 12

Fed. R. Civ. P. 8(a) ........................................................................ 12

Fed. R. Civ. P. 12(b)(1) ..................................................................... 5

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    **INTRODUCTION**

Three complaints, two motions to dismiss, and nine months later, this Court is again tasked with determining why Plaintiff March Marchioli ("Marchioli") cannot plead a concrete harm to satisfy Article III, or even enough factual allegations to make it plausible Pre-employ.com, Inc. ("PE") violated the Fair Credit Reporting Act ("FRCA"). This Court's Order regarding PE and Defendant Eisenhower Medical Center's ("EMC") respective motions to dismiss Marchioli's original complaint illustrated the dearth of factual content in his complaint. Throughout the Order, the Court highlighted a consistent them: Marchioli's complaint contained zero factual allegations to satisfy Article III's standing requirements or Rule 8's pleading requirements. Yet, despite this Court granting Marchioli leave to amend to correct this deficiency, Marchioli's Second Amended Complaint ("SAC") fares no better.

In Marchioli's latest attempt, he makes three new conclusory allegations: (1) PE violated the FCRA's user certifications and notice provisions; (2) Marchioli does not possess these user certifications and notices, and therefore PE probably violated these sections; and (3) PE's alleged omissions caused him to suffer an invasion of his privacy and deprive him of his information rights under the FCRA. None of these allegations, however, support subject matter jurisdiction or plausibility.

Principally, the Supreme Court has made clear that violating bare procedural statues regulating information and obligations between reporting agencies and users do not amount to a concrete harm.  Moreover, Marchioli expressly consented to EMC procuring, and PE compiling, a consumer report on him, and therefore did not suffer any invasion of his privacy. Thus, Marchioli lacks standing under Article III.

Furthermore, the FCRA does not require PE to disclose copies of PE's user certifications with EMC or the user notices PE provided EMC. Thus, Marchioli's lack of possession of these documents does not make it plausible PE violated the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

FCRA. Marchioli also failed to allege any actual damages or factual allegations that PE willfully violated the FCRA, and therefore has not pled enough facts to allege a private cause of action under the FCRA.  Consequently, PE respectfully requests this Court to dismiss Marchioli's SAC with prejudice, as Marchioli has twice failed to establish subject matter jurisdiction or the plausibility of his claims.

## II.    STATEMENT OF MARCHIOLI'S ALLEGATIONS AND EMC'S CONTRADICTING EVIDENCE

### A.    Marchioli's Second Amended Complaint

On February 23, 2017, Marchioli filed his SAC against PE for alleged violations of the FCRA and UCL. Despite this Court dismissing Marchioli's entire Complaint for failure to allege any factual information, Marchioli again treads down this path with only conclusory allegations. In Marchioli's SAC, Marchioli alleges he is a resident of Pittsburgh, Pennsylvania, and was offered and accepted employment in California with EMC. ECF No. 59, ¶¶ 3, 7. Thereafter, Marchioli alleges he requested, and later received, a copy of PE's report on him (*Id.*, ¶24), but that he was not provided all of the "Consumer Rights Notices/Authorizations" in his report (*Id.*, ¶24), which Marchioli defines ambiguously as "proper notices, disclosures, certifications, or authorizations." *Id.*, ¶3.

Based on these allegations, Marchioli avers PE violated the FCRA by not providing EMC with a notice of EMC's responsibilities under the FCRA, and failing to obtain certifications from EMC that it would comply with the FCRA. Specifically, Marchioli alleges PE violated the user notice provision contained in Section 1681e(d), and the user certification provisions contained in Sections 1681d(d)(1) and 1681b(b)(1)(A)(i). *Id.*, ¶¶34-35. Marchioli also alleges PE violated Section 1681e(a) by failing to maintain reasonable procedures to ensure users certified the purposes for obtaining consumer information, and that the information will not be used for any other purpose. *Id.*, ¶36. Marchioli also asserts PE violated California's UCL because PE violated the FCRA sections cited above. *Id.*, ¶47.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- 2 -    **PRE-EMPLOY.COM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SAC**

To substantiate these claims, Marchioli *assumes* PE failed to notify EMC about its obligations under the FCRA and obtain the proper certifications. This assumption is reached by Marchioli because: (1) PE did not provide the certifications to Marchioli with the "Pre-employ report"; and (2) EMC decided not to include these certifications and notices as exhibits in its previous Anti-SLAPP motion. *Id.*, ¶¶34-37. Thus, Marchioli admits his claims against PE are conjectural. Additionally, Marchioli specifically *disclaims* he is alleging that PE prepared an inaccurate report on him, and he is not bringing any claims related to EMC's employment decision on his application for employment. *Id.*, ¶15.

In addition to Marchioli's conjectural claims against PE, Marchioli makes conclusory allegations he suffered an invasion of his privacy rights and was deprived of his informational rights under the FCRA. *Id.*, ¶3. Specifically, Marchioli alleges the "CRA Defendants" invaded Marchioli's privacy by investigating Marchioli without his consent and sharing his private information with "Employer Defendants." *Id.*, ¶38. But Marchioli implicitly admits that Marchioli may have possibly signed authorizations for EMC to procure, and PE to prepare, a consumer report on him. *Id.*, ¶27. Marchioli also makes a conclusory allegation that he suffered an information injury because he did not receive the disclosures regarding his rights and Defendants' obligations. *Id.*, ¶38. But again, Marchioli fails to trace the speculative harm he alleges he sustained back to PE's alleged violations. Moreover, Marchioli does not allege factual allegations that he sustained actual damages from PE's (or even EMC's) actions.

### B. Marchioli Authorized EMC To Procure, And PE To Compile, A Consumer Report On Him.

Despite Marchioli's allegations he cannot recall exactly whether he authorized EMC to procure a consumer report on him, EMC has presented admissible evidence to this Court that contradicts Marchioli's wavering allegation. Specifically, EMC attached to its Motion to Strike Marchioli's original Complaint

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

is a declaration from EMC's Director of Human Resources, David Kowalczyk, contradicting Marchioli's allegations. ECF No. 41-4. In the declaration, Kowalczyk states that to complete EMC's application through its online website, Marchioli authorized and consented to EMC procuring, and PE compiling, a consumer report on Marchioli. ECF No. 41-4, ¶6. Kowalcyzk also attached copy of the FCRA authorization that Marchioli had to execute in order to complete and submit an online job application with EMC. ECF No. 41-4, ¶6; ECF No. 41-5, Ex. C. That document states, in part:

> By my signature below, I consent to the release of consumer reports and investigative consumer reports prepared by a consumer reporting agency, such as Pre-employ.com, Inc., to the Company.
>
> ****
> I understand that, to the extent allowed by law, information contained in my job application or otherwise disclosed by me before, during or after my employment, if any, may be utilized for the purpose of obtaining consumer reports or investigative consumer reports.
>
> ****
> I also authorize the disclosure of information concerning my employment history, earnings history, education, credit history, credit capacity and credit standing, motor vehicle history and standing, criminal history, and all other information deemed pertinent by the consumer reporting agency to the agency by the following: past or present employers; learning institutions, including colleges and universities; law enforcement agencies; federal, state and local courts; the military; credit bureaus; and, motor vehicle records agencies.

ECF No. 41-5, Ex. C.

Additionally, EMC submitted the declaration of Erin Davis, EMC's Credentials Coordinator for EMC's Medical Staff Office, which also attested to Marchioli providing his consent for EMC to investigate his prior employment. Specifically, Marchioli executed a Statement of Application/Consent To Release Information, which Marchioli signed and dated. ECF No. 41-2, ¶5; ECF No. 41-5, Ex. J. This document explicitly stated that Marchioli "agree[d] . . . to cooperate with and assist the [EMC's] Medical Staff in obtaining information pertinent to the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

consideration of [Marchioli's] professional qualifications, which includes queries to [Marchioli's] colleagues." ECF No. 41-5, Ex. J, pg. 121. Davis also declared that she communicated with Marchioli several times from December 2014 to March 2015 regarding EMC's credentialing process, which requires EMC to verify Marchioli's employment history by contacting his prior employers. *See* ECF No. 41-2; ECF No. 41-5, Ex. R and S.

Consequently, Marchioli had authorized and consented to PE compiling a consumer report, including regarding his prior employment, and repeatedly authorized and consented to EMC receiving this information for employment purposes.

## III.   ARGUMENT

### A.   This Court Must Dismiss Marchioli's Complaint Because Marchioli Did Not Allege An Injury In Fact Under Article III Traceable To PE, And Therefore This Court Lacks Subject Matter Jurisdiction Over His Claims Against PE.

#### 1.   Legal Standard Of Review

Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1), any party may challenge a federal court's subject matter jurisdiction to hear the case before the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Jurisdiction in federal courts is limited by Article III of the Constitution, which restricts federal courts to deciding actual cases and controversies.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  "One element of the case-or-controversy requirement is plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty In'tl USA*, 133 S. Ct. 1138, 1146 (2013).  "Standing to sue . . . limits the category of litigants empowered to maintain a lawsuit in federal court . . . ." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

On a Rule 12(b)(1) motion, the plaintiff bears the burden of demonstrating standing under Article III.  *Sopak v. Northern Mountain Helicopter Serv*., 52 F.3d 817, 818 (9th Cir. 1995). If the moving party, i.e. the defendant, "presents affidavits

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1   or other evidence properly brought before the court, the party opposing the motion

2   must furnish affidavits or other evidence necessary to satisfy its burden of

3   establishing subject matter jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362

4   (9th Cir. 2004). To establish Article III standing, a plaintiff must show: "(1) injury-

5   in-fact—an invasion of a legally-protected interest that is both concrete and

6   particularized, and actual or imminent, (2) causation, and (3) redressability."

7   *Lujan*, 504 U.S. at 560.

8        **2.**    **Marchioli's Allegations That PE Violated The FCRA's User**

9                  **Notice And Certification Provisions Are Bare Procedural**
               **Violations Divorced Of Any Concrete Harm.**

10       Critical to this Court's decision here, "[i]t is settled that Congress cannot

11  erase Article III's standing requirements by statutorily granting the right to sue to a

12  plaintiff who would not otherwise have standing." *Raines*, 521 U.S. at 820 n.3.

13  Although Congress has a role in identifying certain legally cognizable harms, that

14  "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement

15  whenever a statute grants a person a statutory right and purports to authorize that

16  person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549.  Indeed, plaintiffs

17  cannot "allege a bare procedural violation, divorced from any concrete harm, and

18  satisfy the injury-in-fact requirement of Article III."   According to the Supreme

19  Court, a "concrete" harm must be a "de facto" injury; that is, the injury must

20  actually exist in a way that is "real" and not "abstract." *Spokeo, Inc. v. Robins*, 136

21  S. Ct. 1540, 1548 (2016), as revised (May 24, 2016).

22           **a.**    **The Supreme Court Has Rejected Marchioli's Claim**

23               **That He Suffered A Concrete Harm From PE**
             **Allegedly Failing To Provide EMC The Required**

24               **Notice Of A User's Obligations Under The FCRA.**

25       Marchioli alleges PE violated 15 U.S.C. § 1681e(d) based on a conclusory

26  allegation that PE failed to provide EMC, a user of Marchioli's consumer report,  a

27  notice of its responsibilities under the FCRA. But the Supreme Court has already

28  declared consumers do not sustain any concrete harm when a consumer reporting

         - 6 -         

agency ("CRA") violates this section.

In *Spokeo, supra*, Supreme Court granted certiorari to decide whether a plaintiff's allegations that a consumer reporting agency ("CRA"), Spokeo, Inc., violated certain FCRA statutes satisfied Article III's standing requirements. *Spokeo,* 136 S. Ct. at 1545-46. There, the plaintiff filed a putative class action, alleging that Spokeo posted inaccurate information about him on its website. *Id.* at 1546. The plaintiff alleged this violated the FCRA's statutes, specifically claiming that Spokeo failed to notify furnishers and users of consumer information of their responsibilities under the FCRA (15 U.S.C. § 1681e(d)). The plaintiff's putative class action complaint also alleged Spokeo willfully violated the FCRA, and therefore he was entitled to statutory and punitive damages. *Id.*

On appeal, the Supreme Court held Article III standing requires a concrete harm even in the context of a statutory violation. *Id*. at 1549. This is because a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Rather, at minimum, the plaintiff must still demonstrate a defendant's violation of a statute poses a "risk of real harm." *Id.*

To that end, the Supreme Court acknowledged "that Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id*. (citations omitted). But the Supreme Court explicitly stated that a "violation of one of the FCRA's procedural requirements may result in no harm." *Id*. at 1550. And allegations of "a bare procedural violation, divorced from any concrete harm," do not satisfy the injury-in-fact requirement of Article III. *Id*. at 1549. Expounding on this, the Supreme Court provided guidance to lower courts on this judicial standard with two procedural violations that result in no concrete harm. Pertinently, the Supreme Court stated:

> A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.

*Spokeo, Inc.*, 136 S. Ct. at 1549. The Supreme Court also went a step further and stated that even if a consumer report contained inaccuracies, not all trivial inaccuracies cause harm or present any material risk of harm, such as inaccurate zip codes. *Id*.

Taking the Supreme Court's direct and applicable guidance into consideration, it is clear that Marchioli cannot allege a "concrete harm" to satisfy Article III standing by merely alleging PE failed to notify a user (i.e. EMC) of its statutory obligations under the FCRA. Yet, that is exactly what Marchioli seeks to accomplish, as Marchioli specially disclaims he is alleging PE prepared an inaccurate report on him. Nevertheless, he seeks for this Court to find PE caused him to sustain a concrete harm by failing to provide EMC the required notice under 15 U.S.C. § 1681e(d) of a user's duties under the FCRA. But the Supreme Court unequivocally rejected this satisfied Article III's concrete harm requirement. This Court should therefore follow the Supreme Court's direct guidance and dismiss Marchioli's 15 U.S.C. § 1681e(d) claim with prejudice, as he twice has failed to plead any concrete harm.

    **b.**  **Marchioli's Claim That PE Violated The FCRA By Failing To Obtain User Certifications From EMC Does Not Satisfy Article III's Requirement That Marchioli Plead A Concrete Harm.**

The rest of Marchioli's claims against PE are pled contingent on Marchioli's allegation that PE failed to obtain from EMC certifications that EMC complied with the FCRA. For instance, Marchioli makes conclusory allegations that PE violated 15 U.S.C. 1681d(d)(1) by failing to obtain EMC's certification it complied with FCRA's disclosure requirements contained in Section 1681d for investigative consumer reports. Marchioli similarly alleges PE violated 15 U.S.C. 1681b(b)(1)(A)(i) by failing to obtain EMC's certification it complied with FCRA's

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Los Angeles*

disclosure requirements for standard consumer reports. And finally, Marchioli alleges PE violated 1681e(a) by failing to maintain reasonable procedures to ensure users certify the purposes for which the consumer information is sought, and certify that the information will be used for no other purpose.[1] Violation of these statutes by themselves, however, do not equate to a concrete harm.

For example, in *Larroque v. First Advantage LNS Screening Sols., Inc.*, the Northern District held that a plaintiff's putative class action for violations that a CRA failed to certify a user complied with the FCRA did not equate to a concrete harm. No. 15-cv-04684-JSC, 2016 WL 4577257, at *5 (N.D. Cal. Sept. 2016). There, the CRA provided to the plaintiff's prospective employer a consumer report about plaintiff. *Id*. at *1. The plaintiff, however, claimed the CRA did not certify with the prospective employer that it had complied with the FCRA's disclosure and authorization requirements prior to procuring the consumer report. *Id*. The plaintiff subsequently filed a putative class action against the CRA, alleging the CRA violated Section 1681b(b)(1) of the FCRA. *Id*.

Following the Supreme Court's decision in *Spokeo*, the CRA argued the plaintiff lacked Article III standing. *Larroque*, 2016 WL 4577257, at *4. Specifically, the CRA argued that the plaintiff only alleged a violation of a bare procedural requirement between a CRA and a user. *Id*. In response, the plaintiff argued that the CRA's failure to certify the prospective employer complied with the FCRA resulted in an invasion of her privacy. *Id*. The court disagreed with the plaintiff, as it found the plaintiff had expressly consented in writing to the CRA disclosing and releasing her consumer report to the prospective employer for employment purposes. *Id*. at *5. The court therefore held that the plaintiff had not suffered an "invasion of privacy" or any other concrete harm, and was only alleging a bare procedural violation of the FCRA. *Id*. The court noted that this was the exact

[1] For all of these alleged violations, however, Marchioli admittedly has no evidence to suggest that PE failed to obtain these certifications.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**PRE-EMPLOY.COM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SAC**

situation the Supreme Court indicated as not conferring Article III standing. *Larroque*, 2016 WL 4577257, at *5.

Similar to the plaintiff in *Larroque*, Marchioli cannot demonstrate he suffered a concrete harm because PE allegedly failed to certify with EMC that EMC had complied with the FCRA's disclosure and authorization requirements. Marchioli is not alleging any actual damages; instead, he has only pled conclusory allegations that he suffered an "invasion of privacy" and an "informational injury" by PE failing to obtain certifications. But Marchioli fails to substantiate this conclusory claim with any factual allegations. In fact, Marchioli specifically disclaims he is alleging PE inaccurately reported the contents of his consumer report, or that EMC used the consumer report for an improper purpose. Thus, Marchioli is claiming that violations of the FCRA's certification statutes by themselves amount to an "invasion of privacy" and an "informational injury." This is not true.

First, none of the FCRA's certification statutes create substantive rights for Marchioli. Rather, the FCRA's certification statutes create procedural obligations between CRA and users of consumer reports. This is therefore similar to the bare procedural violation the Supreme Court identified in *Spokeo*, as the FCRA's certification provisions are independent and separate from the user's obligations to a consumer to comply with the FCRA.

Second, Marchioli cannot assert PE's alleged failure to obtained certifications from EMC resulted in an "invasion of privacy" or an "informational injury." This is because Marchioli ***expressly consented and authorized*** PE to disclose and release the consumer report to EMC. Specifically, the disclosure and authorization Marchioli signed expressly stated: "[Marchioli] consent[s] to the release of consumer reports and investigative consumer reports prepared by a consumer reporting agency, such as Pre-employ.com, Inc., to [EMC]." ECF No. 41-5, Ex. C. Marchioli therefore suffered no invasion of his privacy, as he consented to

EMC procuring, and PE compiling, a consumer report on him. Marchioli also was acutely aware that EMC would investigate his employment and criminal background, as EMC had to ensure Marchioli had the proper work experience to allow him to practice medicine at its hospital.

Moreover, Marchioli has not pled any factual allegations that would negate his consent. For example, he did not pled he was confused by the disclosure and authorization because it contained extraneous information, or even identified what information he was not provided. *Cf. Syed v. M-I, LLC*, 846 F.3d 1034, 1039-40 (holding consumers suffer a concrete injury if they are deprived of their ability to "meaningfully authorize the credit check"). Instead, he simply alleges that EMC's disclosure and authorization did not comply with the FCRA's statutes. Marchioli therefore has not sufficiently pled he sustained a concrete harm from PE allegedly failing to obtain certifications from EMC.

Indeed, under similar facts as presented here, other district courts in the Ninth Circuit and the Sixth Circuit have declined to find a concrete harm, even when the plaintiff alleges the prospective employer's disclosure and release technically violated the FCRA. *See Kirchner v. First Advantage Background Servs. Corp.,* No. CV 2:14-1437 WBS EFB, 2016 WL 6766944, at *3 (E.D. Cal. Nov. 14, 2016) ("[T]he court again notes that there was no unauthorized invasion of privacy here. Whereas [the plaintiff cited case law where a consumer] was never provided notice of or opportunity to consent to release of his consumer report, plaintiff was provided such notice and opportunity here." (internal citations omitted)); *Bultemeyer v. CenturyLink, Inc*., No. CV-14-02530-PHX-SPL, 2017 WL 634516, at *4 (D. Ariz. Feb. 15, 2017); *Disalvo v. Intellicorp Records, Inc*., No. 1:16 CV 1697, 2016 WL 5405258, at *3 (N.D. Ohio Sept. 27, 2016).

Thus, this Court should dismiss Marchioli's FCRA claims against PE with prejudice, as he has failed to plead a concrete harm from PE violating bare procedural statues regulating information and obligations between CRAs and users.

- 11 -

**B.      This Court Must Dismiss Marchioli's Claims Against PE Because Marchioli Did Not Allege Sufficient Factual Allegations That PE Violated The FCRA Or California's Unfair Competition Law.**

### 1.      Legal Standard Of Review

Federal Rule of Civil Procedure 8(a) provides the basic standard for federal pleadings: A pleading that states a claim for relief must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." (Fed R. Civ. P. 8(a)). The function of a complaint is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether "there is a lack of cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

In determining what constitutes sufficient facts, the Supreme Court has stated that a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Put another way, the factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Consequently, to survive a motion to dismiss, a plaintiff must plead something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" (*Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 555). And although a court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true, (*Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)), this rule does not apply to "a legal conclusion couched as a factual allegation." (*Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

286 (1986); *see e.g. Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) ("[A] court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.")

**2.    Marchioli Failed To Plead Sufficient Factual Allegations That Make It Plausible PE Violated Any Section Of The FCRA.**

To support his claims against PE, Marchioli makes three allegations to convince this Court his claims are plausible. Marchioli alleges that: (1) prior to filing this action, Marchioli requested and received a copy of PE's report on him; (2) the report does not contain all of the "Consumer Rights Notices/Authorizations" required by the FCRA, and possibly are inaccurate; and (3) Marchioli never received PE's certifications with EMC or the user notices PE provided to EMC about its obligations under the FCRA.  These allegations, however, do not allow this Court to plausibly infer PE violated the FCRA.

**a.    Marchioli's Lack Of Possession Of The User Notices And Certifications Does Not Make It Plausible PE Failed To Provide Or Obtain Those Notices And Certifications From EMC.**

First and foremost, the FCRA does not require PE to provide Marchioli copies of these user notifications and certifications in his consumer report (or even independently). For instance, Marchioli alleges PE violated the user notice provision contained in Section 1681e(d). But the only factual allegation to substantiate this claim is that Marchioli did not receive any notice from PE that complied with this section. ECF No. 59, ¶37(c). *Section 1681e(d), however, only requires PE to provide this notice to EMC.* 15 U.S.C. 1681e(d). Consequently, Marchioli's factual allegation that he did not receive the user notice with his consumer report does not substantiate his claim.

The same is also true for every "certification" provision in the FCRA that Marchioli claims PE violated. For example, Marchioli claims PE violated Section

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1681b(b)(1) by failing to obtain EMC's certification it complied with FCRA's disclosure requirements for standard consumer reports. *Id.*, ¶35. Again, in a formulaic recitation, Marchioli attempts to bolster this conclusory allegation by stating he did not receive any certifications with his report. *Id.*, ¶35(a). But Section 1681b(b)(1) does not provide Marchioli a right to receive this certification with his report. Thus, the fact Marchioli never received a copy of this certification does not support his claim. This analysis is also correct and applicable for Marchioli's allegations that PE violated Sections 1681d(d)(1) and 1681e(a). Consequently, Marchioli's allegations that he is not in possession of these documents are irrelevant to his claims.

Moreover, Marchioli's pleading practice is the exact practice the Supreme Court sought to preclude in *Twombly*. In *Twombly*, the plaintiffs were individuals who purchased local telephone or high speed internet service, and filed a class action against several telephone companies. *Twombly*, 550 U.S. at 550. The plaintiffs alleged that the defendants violated the Sherman Act by conspiring and agreeing to prevent competitive entry into their respective local telephone and internet services markets. *Id.* at 550-51. To substantiate their claim, the plaintiffs detailed in their complaint the history of the industry, the governing laws, and the defendants' parallel businesses practices. *Id.* The plaintiffs alleged these actions, although not direct evidence of collusion, illustrated the defendants conspired and agreed to restrain competition and trade within the industry in violation of the Sherman Act. *Id.*

On appeal, the Supreme Court found that the allegations only amounted to conclusory allegations and legal conclusions insufficient to state a plausible claim for relief. *Id.* at 564. Specifically, the Supreme Court found that the plaintiffs rested their claim on descriptions of parallel conduct and not on any independent allegation of any actual agreement. *Twombly*, 550 U.S. at 564. And although the complaint contained few stray statements that spoke directly of agreement, the

- 14 -

**PRE-EMPLOY.COM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SAC**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    Supreme Court held that on a fair reading, those statements were merely legal

2    conclusions resting on the prior allegations. *Id*. Thus, the Supreme Court ruled that

3    the plaintiffs must allege something beyond the mere possibility of loss causation,

4    "lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of

5    a number of other people, with the right to do so representing an in terrorem

6    increment of the settlement value.'" *Twombly*, 550 U.S. 557–58.

7          Similarly to *Twombly*, Marchioli's allegations do not make it plausible PE

8    violated the FCRA. Marchioli simply alleges PE must have violated the FCRA's

9    certification and user notice provisions because Marchioli did not receive copies of

10    these notices or certifications. But this is not sufficient factual allegations to make it

11    plausible that PE failed to obtained or provide the certifications and user notices to

12    EMC. In fact, Marchioli's allegations are similar to the plaintiffs' parallel conduct

13    allegations in *Twombly*, as Marchioli is trying to convince this Court that his lack of

14    possession of these documents equates to PE not complying with the FCRA. But at

15    most, these allegations barely make it conceivable that PE violated the provisions

16    he identified in the FCRA. The Supreme Court, however, requires plausibility, and

17    Marchioli's factual allegations make it impossible for this Court to infer whether it

18    is plausible PE violated the FCRA.

19          Thus, this Court should not allow Marchioli to proceed against PE based on

20    these allegations, especially because Marchioli wants to transform this fact-free

21    complaint into a nationwide class action of thousands of purported class members.

22    To conclude otherwise would allow Marchioli's groundless claims to further

23    deplete PE's resources and waste this Court's time. As a result, PE respectfully

24    requests this Court to dismiss all FCRA claims against PE with prejudice.

25              **b.**    **Independently, Marchioli's Section 1681e Claim Also**

26                      **Failed To State A Claim For Relief Because Marchioli Did Not Plead EMC Used His Consumer Report For**

27                      **An Improper Purpose.**

28    Marchioli alleges that PE violated Section 1681e(a) by failing to maintain

Ropers Majeski Kohn & Bentley
*A Professional Corporation*
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

reasonable procedures to require: (a) prospective users identify themselves, (b) certify the purposes for the information users seek, and (c) certify that the user will not use the information for any unauthorized purpose. ECF No. 59, ¶36(a). Thus, to successfully allege PE failed to employ "reasonable procedures" to ensure consumer reports were not used for an improper purpose, Marchioli must plead that EMC used his report for a purpose that violates Section 1681b. *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 843 (5th Cir. 2004) ("A plaintiff bringing a claim that a reporting agency violated the 'reasonable procedures' requirement of section 1681e must first show that the reporting agency released the report in violation of section 1681b.")

Marchioli's claim underneath Section 1681(e) is therefore dependent on factual allegations that EMC used his consumer report for an improper purpose. *E.g. Thomas v. Fin. Recovery Servs.,* No. EDCV 12-1339 PSG OPX, 2013 WL 387968, at *4 (C.D. Cal. Jan. 31, 2013) ("[T]o survive a motion for judgment on the pleadings on a § 1681b claim, the plaintiff must allege facts that, if proven, would establish that the defendant did not have a permissible purpose for obtaining the credit report at issue.") But this allegation is completely absent from Marchioli's complaint. In fact, Marchioli disclaims this needed allegation, stating "this action does not assert any claims regarding "the reporting on, [Marchioli or any putative class member]" and "any particular employment decision . . . ." *Id*., ¶15. Moreover, Marchioli disclaims he is bringing claims regarding the results of any particular investigation. As a result, this Court should dismiss Marchioli's Section 1681e(a) claim against PE with prejudice because Marchioli is not alleging EMC used the consumer report for an improper purpose.

        **c.**    **Marchioli Also Failed To Plead Actual Damages, And Therefore He Has No Private Cause Of Action Under Section 1681(o).**

Section 1681o of the FCRA provides a consumer with a private cause of action for negligent violations of the FCRA. 15 U.S.C. § 1681o. But to bring an

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

action underneath this section, the consumer must sustained actual damages from a person's failure to comply with the FCRA. 15 U.S.C. § 1681o. Marchioli must therefore plead and prove actual damages resulting from PE's violation of the FCRA to recover under a negligence theory. *See Banga v. Experian Info. Sols., Inc*., 473 F. App'x 699, 700 (9th Cir. 2012); *see also Sandoval v. Experian Info. Sols., Inc*., No. 16-CV-03344-BLF, 2017 WL 1092361, at *7 (N.D. Cal. Mar. 23, 2017); *Levinson v. Transunion LLC*, No. CV1600837RSWLPLAX, 2016 WL 3135642, at *5 (C.D. Cal. June 2, 2016).  Thus at the pleading stage, Marchioli must plead sufficient factual allegations that he suffered an economic loss, or some sort of humiliation, mental distress, or injury to his reputation and creditworthiness. *Seungtae Kim v. BMW Fin. Servs. NA*, LLC, 142 F. Supp. 3d 935, 944 (C.D. Cal. 2015).

Marchioli, however, has not pled any factual allegations to support his claim underneath Section 1681o. As this Court previously noted, Marchioli failed to plead any actual damages in his original complaint. ECF No. 58, at 12. Yet, inexplicitly, Marchioli again does not identify in any actual damages he sustained in his SAC. Instead, Marchioli makes a conclusory claim that he is entitled to actual damages underneath Section 1681o because of "Defendants actions, errors and omissions . . . ." ECF No., ¶40. But this type of "label and conclusion" pleading is insufficient to state a claim underneath Section 1681o. *See Twombly*, 550 U.S. at 555. The allegation does not contain any facts supporting actual damages, nor does it contain facts tracing the actual damages to PE's conduct. *Levinson*, 2016 WL 3135642, at *5. This Court should therefore dismiss Marchiolis' negligence claims under Section 1681o of the FCRA with prejudice.

   d.    **Similarly, Marchioli Failed To Plead Sufficient Factual Allegations That Make It Plausible PE Willfully Violated The FCRA.**

Without pleading any actual damages, Marchioli's only private right of action under the FCRA is for statutory damages under Section 1681n. But

according to this section, Marchioli must plead PE "willfully failed" to comply with the FCRA. 15 U.S.C § 1681n. The Supreme Court has interpreted the term "willfully failed" in the FCRA to mean a defendant's conduct was intentional or reckless. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Recklessness is further defined to mean "action entailing an unjustifiable high risk of harm that is either known or so obvious that it should be known." *Id*. at 68 (footnote omitted).

In the context of the FCRA, for PE to have acted in reckless disregard of its obligations under the FCRA, PE's interpretation and reading of the FCRA must have "ran a risk of violating the law substantially greater than the risk associated with a reason that was merely careless." *Id*. at 69. Factors for this Court to consider in making this conclusion are whether PE's interpretation of the FCRA had "a foundation in the statutory text", and whether PE had "guidance from the court of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took." *Id*. at 69-70. In sum, PE's interpretation of the FCRA must have been "objectively unreasonable", and not merely erroneous, for Marchioli's claims to proceed past PE's motion to dismiss. *See, e.g*., *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc*., 848 F.Supp.2d 532, 543–46 (E.D.Pa.2012); *Long v. Tommy Hilfiger U.S.A., Inc*., 671 F.3d 371, 378 (3d Cir.2012); *Shlahtichman v. 1–800 Contacts, Inc*., 615 F.3d 794, 803 (7th Cir.2010).

Applying this standard here, Marchioli has not alleged *any factual allegations* that would allow this Court to infer PE's interpretation of its obligations under the FCRA was objectively unreasonable. Again, Marchioli makes only conclusory allegation that PE willfully violated the FCRA based on the "well-established nature of the FCRA, the clear nature of the FCRA requirements . . ., Defendants knowledge of the law, and Defendants repeated violations of the FCRA despite that knowledge." ECF No. 59, ¶39.  These allegations are not factual, however, and therefore Marchioli's other allegations regarding PE's conduct must support his willfulness claim. *Twombly*, 550 U.S. at 554.

But as explained above in Section III(B)(2), Marchioli's allegations that PE violated the FCRA are also nothing more than legal conclusions couched in factual allegations, which were *pled on information and belief*. For instance, Marchioli asserted that: (1) "[b]ased on available information, CRA Defendants failed to obtain certifications from Employer Defendants required by [Section 1681b(b)(1)]," ECF No. 59, ¶35(b), and (2) "[b]ased on available information, CRA Defendants failed to provide the notice to Employer Defendants required by Section 1681e(d)." ECF No. 59, ¶37(b). Thus, Marchioli's conclusory allegations that PE acted willfully must also fail because Marchioli's allegations regarding PE's conduct are deficient. This Court should therefore dismiss Marchioli's FCRA claims alleged against PE with prejudice.

> **3.      This Court Should Also Dismiss Marchioli's UCL Claim Because He Lacks Standing, Failed To Plead Any Economic Injury Or A Plausible Claim Under The FCRA, And Is Not Entitled To Injunctive Relief.**

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The UCL covers a wide range of conduct, as it embraces "anything that can properly be called a business practice" and "borrows violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp*. 29 Cal.4th 1134, 1143 (2003) (citations omitted); *see Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). But while the scope of conduct covered by the UCL is broad, its remedies are limited to equitable relief; "damages cannot be recovered." *Korea Supply Co*., 29 Cal.4th at 1143. Moreover, a plaintiff must satisfy the UCL's restrictive standing requirements, which require a party to (1) demonstrate a loss or deprivation of money or property, i.e., economic injury, and (2) show that that economic injury was *caused by* the unfair business practice that is the gravamen of the claim. *Kwikset Corp. v. Sup. Ct.,* 51 Cal.4th 310, 322 (2011) (emphasis in

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

original).

Applying these principles here, Marchioli's UCL claim fails for four reasons: First, Marchioli lacks standing to sue because he did not sustain an economic injury. Second, Marchioli's UCL claim is contingent on pleading sufficient facts to state a plausible claim under the FCRA, which Marchioli does not accomplish. Third, Marchioli does not have a prior ownership interest in the funds he seeks to disgorge from PE. And fourth, the FCRA preempts Marchioli's request for restitution and injunctive relief under UCL.

### a.   Marchioli Lacks Standing To Allege His UCL Claim Because He Did Not Sustain An Economic Injury Caused By PE's Unfair Business Practices.

In addition to lacking Article III standing, Marchioli also does not have standing to allege his UCL claim because the private right of action is limited to persons "who [have] suffered injury in fact and [have] lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code § 17204. As the California Supreme Court has held:

> To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.

*Kwikset Cor.*, 51 Cal.4th at 322 (emphasis in original). Consequently, the standing requirements under the UCL are even narrower than Article III's standing requirements, as a UCL claim requires a person to suffer an "economic injury" as opposed to an intangible injury not resulting in any economic loss. *Id.* at 324.

Here, Marchioli fails to allege PE caused him to sustain an economic injury. At most, Marchioli alleges ambiguously that PE's actions resulted in an invasion of his privacy. But a conclusory allegation that PE invaded his privacy does not equate to an economic injury. And Marchioli does not allege additional facts that this invasion of his privacy deprived him of money or property to which he had a

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

cognizable claim, or that it required him to enter into an economic transaction that would otherwise have been unnecessary. *See Kwikset Corp.*, 51 Cal.4th at 323. Thus, for this separate reason, Marchioli lacks standing to allege a UCL claim.

### b.   Marchioli Did Not Plead Sufficient Facts To State A Plausible Claim Under The FCRA.

Because the UCL "'borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable," a plaintiff must properly plead the defendant violated the underlying laws and statutes that are the basis for the UCL claim. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). For example, in *Rubio v. Capital One Bank* (9th Cir. 2010), the defendant argued plaintiff's UCL claim failed on the merits, which was based on violations of the Truth in Lending Act ("TILA). *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010). The Ninth Circuit disagreed, stating that because the plaintiff properly alleged a TILA violation, the plaintiff also properly "alleged a UCL violation under the prong of the UCL that prohibits "unlawful" business acts or practices." *Id*. at 1204.

Marchioli's UCL claim is dependent on his allegations that PE violated the FCRA. ECF No. 59, ¶¶45-46. Specifically, Marchioli's UCL claim rests upon this sole conclusory allegation: "Defendants' failure to abide by the law and comply with the FCRA has also harmed consumers . . . Such conduct violates the UCL and constitutes actual injuries in fact." *Id*., ¶46.  But as demonstrated above, Marchioli's conclusory allegations regarding the FCRA do not satisfy the threshold pleading requirements.  Consequently, the Court must also dismiss Marchioli's UCL claim.

### c.   Marchioli's UCL Claim For Restitution Fails As A Matter Of Law Because He Did Not Have A Prior Ownership In The Monies He Seeks To Disgorge.

Under the UCL, a private plaintiff is limited to only equitable remedies in the form of injunctive relief or restitution. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992) ("While the scope of conduct covered by the UCL is

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    broad, its remedies are limited" to equitable remedies."). For a UCL claim seeking

2    restitution, a plaintiff is limited to recovering from a defendant the specific fund

3    received from the plaintiff, and the plaintiff must demonstrate a prior ownership

4    interest in the fund. *Korea Supply*, 29 Cal. 4th at 1149; *Madrid v. Perot Sys. Corp*.

5    130 Cal. App. 4th 440, 456 (2005) ("[P]laintiff fails to cite any authority that a

6    UCL plaintiff may recover money from a defendant who never received it on a

7    theory that the defendant conspired with or aided someone else who did receive

8    it.").

9         In *Kraus v. Trinity Management Services, Inc*. (2000), the California

10   Supreme Court explained the difference between restitution and disgorgement in

11   the context of the UCL. *Kraus*, 23 Cal.4th 116, 126-27 (2000). Restitution

12   compels a UCL defendant to return money obtained through an unfair labor

13   practice to those who had an interest in the money or property taken. *Id.* On the

14   other hand, disgorgement is broader than restitution because it "may compel a

15   defendant to surrender all money obtained through an unfair business practice even

16   though not all is to be restored to the persons from whom it was obtained . . ." *Id*.

17   at 127. Subsequently, in *Korea Supply Co..*, the California Supreme Court affirmed

18   that nonrestitutionary disgorgement is not an available remedy under the UCL.

19        In *Korea Supply Co*., the court stated that a nonrestitutionary disgorgement

20   remedy is not permitted under the UCL, "as it would enable a [plaintiff] to obtain

21   tort damages while bypassing the burden of proving the elements of liability under

22   a traditional tort claim . . . ." *Korea Supply Co*., 29 Cal. 4th at 1150-51 (emphasis

23   added). Moreover, the court explained that any conclusion to the contrary would

24   result in plaintiffs using the UCL "as an all-purpose substitute for a tort or contract

25   action, something the Legislature never intended." *Id*. Consequently, the court held

26   that a plaintiff may only "recover profits unfairly obtained to the extent that these

27   profits represent monies given to the defendant or benefits in which the plaintiff has

28   an ownership interest." *Korea Supply Co*., 29 Cal. 4th at 1148.

1    Here, Marchioli seeks restitution and disgorgement of PE's profits as a

2  remedy for his UCL claim.  However, the California Supreme Court stated that

3  disgorgement is only applicable to the extent it represents a restitutionary remedy.

4  That is, Marchioli may only disgorge profits from PE if the profits represent monies

5  he had a prior interest in.  But this is impossible. First, Marchioli does not plead he

6  every had any prior interest in any monies that PE received.  Second, PE never

7  received monies from Marchioli, and therefore there are no monies to return.  Thus,

8  Marchioli's request for this Court to disgorge PE of its profits is not a restitutionary

9  remedy, but rather a legal claim for damages.  For this additional reason, this Court

10  must dismiss Marchioli's UCL claim.

11          **d.    Marchioli's UCL Claim For Equitable Relief Also Fail**
                  **As A Matter Of Law Because The FCRA Preempts**
12                **Inconsistent Remedies Under State Law.**

13    Finally, Marchioli's requests for injunctive relief and restitution under the

14  UCL are preempted because the FCRA limits a plaintiff's private cause of action to

15  actual or statutory damages.  As stated above, "A UCL action is an equitable

16  action . . . [and] damages are not available."  *Cortez v. Purolator Air Filtration*

17  *Prods. Co.*, 23 Cal. 4th 163, 173 (2000).  But under the FCRA, private plaintiffs

18  may seek only money damages and not equitable relief such as an injunction, which

19  is specifically reserved to the FTC.  *See* 15 U.S.C. § 1681s(a); *Washington v. CSC*

20  *Credit Servs., Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) ("Congress vested the power

21  to obtain injunctive relief solely with the FTC.").

22    Thus, Marchioli cannot use state law to obtain an injunction for FCRA

23  violations because the FCRA expressly preempts any state law that is inconsistent

24  with its remedial scheme.  *See, e.g.*, *Dicesari v. Asset Acceptance LLC*, No. 11-cv-

25  6815, 2012 WL 4108944, at *6 (E.D. Pa. Sept. 18, 2012) (granting motion to

26  dismiss "to the extent that [p]laintiff seeks this injunction not under the FCRA, but

27  under state law"); *Poulson v. Trans Union, LLC*, 370 F. Supp. 2d 592, 593 (E.D.

28  Tex. 2005) (same); *Hamilton v. DirecTV, Inc.*, 642 F. Supp. 2d 1304, 1306 (M.D.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

PRE-EMPLOY.COM, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS SAC

Ala. 2009) (same); *Millett v. Ford Motor Credit Co.*, No. 04-cv-2450-CM, 2006 WL 1301160, at *4 (D. Kan. May 9, 2006).

The same holds true for UCL actions seeking injunctive relief under the FCRA. *See Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*, No. 11-cv-6648 SBA, 2012 WL 3155559, at *3 (N.D. Cal. Aug. 2, 2012) (dismissing UCL claim seeking injunctive relief under FCRA violations because such relief is preempted); *Moran v. Screening Pros, LLC*, No. 12-cv-05808, 2012 WL 10655744, at *8 (C.D. Cal. Sept. 28, 2012) (same). Consequently, this Court should also dismiss Marchioli's Second Claim for Relief because the FCRA preempts Marchioli's ability to obtain equitable relief under the UCL.

## IV.    CONCLUSION

For the reasons stated above, PE respectfully requests this Court to dismiss all claims Marchioli alleged against PE in his Second Amended Complaint with prejudice, as Marchioli has failed again to plead Article III standing and did not plead sufficient factual allegations to state a claim to relief against PE.

Dated: March 30, 2017                  ROPERS, MAJESKI, KOHN & BENTLEY


By: */s/ Timothy J. Lepore*
    LAWRENCE BORYS
    TIMOTHY J. LEPORE
    Attorneys for Defendant
    PRE-EMPLOY.COM, INC.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles